# Elsa S. Morissette v. Edward Paul Morissette

[463 A.2d 1384]

No. 169-81

Present: Billings, C.J., Hill, Underwood and Peck, JJ., and Larrow, J. (Ret.), Specially Assigned

Opinion Filed April 15, 1983

Motion for Reargument Denied June 7, 1983

*John S. Burgess* and *James W. Stevens*, Brattleboro, for Plaintiff-Appellant.

*Allan R. Keyes* and *Joseph H. Badgewick* of *Ryan Smith & Carbine, Ltd.*, Rutland, for Defendant-Appellant.

**Underwood, J.** By two separate but interrelated orders the trial court reached a final resolution of plaintiff's complaint for divorce. The first, entitled Decree and Order, dated April 18, 1980, granted the defendant a divorce on his counterclaim, and determined custody of the parties' minor daughter, visitation rights, child support, and a division of the marital property. It did not, however, evaluate the plaintiff's equity in the stock of a closely held corporation, Country Kitchen, Inc., reserving that determination for a subsequent hearing.

The second, entitled Final Decision and Order, dated March 24, 1981, determined the fair market value of plaintiff's equity in the stock of Country Kitchen, Inc., the method by which plaintiff would convey her interest in said stock to the defendant, and the note and security she would receive in return.

The plaintiff timely appealed the Final Decision and Order as well as the order denying her amendment to her motion for a new trial, and "any and all other orders, judgments, and decrees issued in connection with the captioned matter." In this regard, she briefed the following issues:

1. Did the trial court err in permitting plaintiff to proceed with her divorce action without sua sponte appointing a guardian ad litem for her?

2. Did the trial court err in permitting an attorney not admitted to practice before the courts of Vermont to influence the course and conduct of plaintiff's divorce case?

3. Is there a final order in this case?

4. Did the trial court err in limiting itself to the dis-

position of only such real and personal property of the parties as specifically set forth in their written stipulation dated March 26, 1979?

5. Did the trial court err in its findings and conclusions as to the fair market value of the plaintiff's ownership equity in the stock of Country Kitchen, Inc.?

6. Did the trial court err in failing to grant a hearing to plaintiff on her motion for a new trial?

It would be an understatement to say that there is anything mundane about this divorce case. More often than not it taxed the patience of a Job, and required the wisdom of a Solomon. The trial court is to be commended for maintaining its judicial temperament throughout and steadfastly holding the litigants on course.

Plaintiff commenced her divorce action by a complaint dated August 31, 1976. After nearly 15 pages of docket entries and the lapse of nearly 3 years, the case was heard on its merits. It was another year before the case could be finally resolved at the trial court level. During that 4-year period the plaintiff hired nine different lawyers and discharged eight of them. In addition there were times when she ostensibly appeared pro se, but simultaneously counseled with an attorney who was not admitted to practice in the State of Vermont.

At the first hearing on the merits the parties filed a written stipulation, which each had signed on March 26, 1979. The stipulation was designed to resolve both temporary and permanent matters. The court accepted the stipulation as voluntarily entered into by the parties and fair under the circumstances. The Decree and Order dated April 18, 1980, closely tracked this stipulation. The court granted a divorce on the ground that the parties had lived separate and apart in excess of six consecutive months and there was no reasonable probability that they could reconcile and resume marital relations. The court further granted custody of the parties' minor daughter to the plaintiff, visitation rights to defendant, and ordered the defendant to pay child support. The parties' residence on Meadowbrook Road, Brattleboro, together with its furnishings, was decreed to the plaintiff, subject to a mortgage thereon which she was to assume. The parties' apartment house on Western Avenue, Brattleboro, together with its fur-

nishings, was decreed to the defendant, subject to a mortgage thereon which he was to assume. Plaintiff waived alimony and attorney fees, so no order was made in that regard.

Pursuant to the terms of the stipulation, plaintiff was to sell to the Country Kitchen, Inc., her 100 shares of stock therein for a price equal to 45% of the value of the parties' ownership equity, which represented 96% of the total stockholders' equity. The parties, believing that they could agree as to the terms of sale and their ownership equity in the stock if the court would determine the fair market value of the assets of Country Kitchen, Inc., requested the court to limit itself in this regard. The court did so, and determined fair market value of those assets to be $500,000.

Thereafter it became clear that the parties could not reach an agreement as to plaintiff's equity interest in her 100 shares of stock, nor to the terms of the note and the type of security that would be given her in exchange for them. Therefore, a further hearing was required. At this hearing the court determined that plaintiff's ownership equity in Country Kitchen was $56,859.62. It ordered the defendant to cause the corporation to execute and deliver to plaintiff a promissory note for that amount, with simple interest at 8% payable in monthly installments of $1100 each, and secured by a second mortgage of the assets of the corporation. Upon compliance with that provision plaintiff was ordered to surrender her 100 shares of stock to the defendant.

## I.

Plaintiff first argues that the failure of the court, sua sponte, to appoint a guardian ad litem for her constitutes reversible error. She insists that the need for one was, or should have been, readily apparent to the court. She concedes, however, that neither she, the defendant, nor their respective attorneys moved to have a guardian ad litem appointed for her, nor did any one of them suggest upon the record any incompetency on her part. Plaintiff intimates that because the court knew or should have known from the evidence that she was incompetent, it was incumbent upon it, under V.R.C.P. 17(b), to appoint for her a guardian ad litem.

The plaintiff's argument is without merit. We have

thoroughly reviewed the record and find no evidence which would have put the court on notice that she lacked the capacity to understand the nature of the proceedings. Moreover, for a judgment to be set aside it must be shown that the party was incompetent at the time of trial and that such incompetency was known to the opposing counsel who refused or neglected to suggest it on the record to the court, or it must be readily apparent from the record that the party had been previously adjudicated insane or incompetent and had not been discharged at time of trial, or that the party was an infant. *Bielawski* v. *Burke,* 121 Vt. 62, 67, 147 A.2d 674, 677 (1959) ; *Billings* v. *Billings,* 123 Vt. 324, 325, 187 A.2d 333, 334 (1963) ; *Pettengill* v. *Gilman,* 126 Vt. 387, 388, 232 A.2d 773, 774 (1967) ; Reporter's Notes, V.R.C.P. 17 (b).

None of these situations being present in the instant case, we hold that the trial court did not err by not appointing a guardian ad litem for the plaintiff.

## II.

Plaintiff argues, for the first time on appeal, that she was denied her constitutional right to effective legal counsel because of the pervasive involvement of an attorney not admitted to practice before the courts of Vermont. However, in civil cases a plaintiff has no constitutional right to have counsel provided. *Caron* v. *Betit,* 131 Vt. 53, 55, 300 A.2d 618, 619 (1972) (citing *Goldberg* v. *Kelly,* 397 U.S. 254, 270 (1970) ). Therefore, our rule that nonconstitutional issues not raised below are waived on appeal bars the plaintiff from prevailing on this issue. *Pope* v. *Town of Windsor,* 140 Vt. 283, 286, 438 A.2d 388, 390 (1981).

## III.

The plaintiff declares that the court erred by not issuing a final order. If she is correct, her appeal must be dismissed. V.R.A.P. 5. The record, however, shows clearly that there is a final judgment which has been appealed to this Court.

The April 21, 1980, Decree and Order dissolves the marital relationship, provides for the custody and support of the minor child, provides that there will be no separate support

for plaintiff, and disposes of all disputed property of the parties with the exception of the plaintiff's stock in Country Kitchen, Inc. The price to be paid plaintiff for her 100 shares of stock and the terms of the payment were expressly left open by the court's decree. Because this issue remained in the case, this Court dismissed an appeal of the April 21, 1980, Decree and Order for lack of a final judgment under V.R.C.P. 54(b).

Thereupon, the matter was set for hearing February 23, 1981, to determine the value of plaintiff's stock and the method of payment. The court rendered its Final Decision, Findings of Fact and Order on March 25, 1981. This order was an amendment to the April 21, 1980, order, adding provisions specifying the amount and method by which the defendant must pay for the plaintiff's stock. Thus the order of March 25, 1981, adjudicates all the remaining issues in the case and constitutes a judgment from which an appeal lies. V.R.C.P. 54(a) and (b).

"The test of whether a decree or judgment is final is whether it makes a final disposition of the subject matter before the Court." *Woodard* v. *Porter Hospital, Inc.*, 125 Vt. 264, 265, 214 A.2d 67, 69 (1965). This test is met in the instant case. The fact that the final judgment was not embodied in a single document is irrelevant. There is no such requirement. Compare V.R.C.P. 58 with Fed. R. Civ. P. 58; see Reporter's Notes, V.R.C.P. 58.

## IV.

Plaintiff maintains that when the court declared that its authority to distribute the assets of the marriage was limited to those enumerated in the written stipulation of the parties dated March 26, 1979, it committed reversible error. She advances the theory now, for the first time, that the stipulation was preliminary in nature and as such dealt with only a portion of the marital property. The record belies this contention. Plaintiff's complaint for divorce recited that the marital property consisted of the parties' residences and contents on Meadowbrook Road and an apartment house and contents on Western Avenue, each in Brattleboro, and the stock in the Country

Kitchen, Inc. These are precisely the same items included in the stipulation.

With regard to the stipulation, the trial court found:

> The record shows that on March 5, 1979, the court set the case for final hearing on March 26, 1979. The parties and the respective attorneys appeared at 9 a.m. on that date but no final hearing was held. The parties and their counsel spent the day working on a settlement of temporary and permanent matters. About 5 p.m. a stipulation signed by the parties and counsel entitled "Re: Temporary and Permanent Matters" was filed with the court.
>
> Whereupon the court, Judge Stephen B. Martin presiding, then heard the attorneys regarding the stipulation *and conducted an examination of each party under oath. Both parties then acknowledged that they entered into the stipulation freely and voluntarily, understood its terms and what the stipulation meant and were perfectly satisfied with it and this court so finds. . . ."* (Emphasis added.)

Such findings are amply supported by the evidence.

■ If plaintiff believed there were any inaccuracies or deletions in the stipulation the time for her to object was when it was submitted to the court for its approval, and not for the first time on appeal to this Court. *Pope* v. *Town of Windsor, supra,* 140 Vt. at 286, 438 A.2d at 390. However, instead of objecting she told the trial court that she was perfectly satisfied with the provisions contained in it. As we stated in *Duke* v. *Duke,* 140 Vt. 543, 545, 442 A.2d 460, 462 (1982), "[w]e will not reverse a lower court when a party's failure to raise some matter below denied the court an opportunity to consider it."

■ Our statutory law permits parties to a divorce action to negotiate for themselves the terms of their marriage dissolution. 15 V.S.A. § 553. The plaintiff has failed to demonstrate that the trial court abused its discretion in accepting the parties' stipulation as providing for a fair and equitable distribution of the property included therein. See *Strope* v. *Strope,* 131 Vt. 210, 216, 303 A.2d 805, 809 (1973). The evi-

dence supports the trial court's finding that the stipulation was intended to resolve all matters between the parties except the valuation of plaintiff's stock in the Country Kitchen, Inc.

## V.

Plaintiff asserts the court committed major errors in its findings of fact and conclusions of law with respect to the fair market value of the assets of Country Kitchen, Inc., and thereafter in the fair market value of plaintiff's ownership equity in the corporation.

The first alleged major error she points to is that the court's findings of fact were one-sided and unfair. She declares the trial court did not incorporate a single one of her requests to find into its findings of fact dated April 18, 1980, but when the defendant filed his Request for Amended and Additional Findings, dated May 12, 1980, the court adopted his requests "sentence for sentence, word for word and comma for comma, without change whatsoever." The plaintiff contends that the trial court's verbatim use of defendant's requests to find constitutes reversible error under our *Krupp* rule. *Krupp* v. *Krupp*, 126 Vt. 511, 513, 236 A.2d 653, 655 (1967).

██ The plaintiff is correct in stating that it is improper for a trial court to fail to make its own findings independently of any requests submitted by the parties. However, in the instant case the court at the close of all the evidence filed fourteen pages of forty-seven independent findings of fact and three pages of its own conclusions of law. Said findings and conclusions are couched in the court's own language and thus avoid the accusation that the evidence has not been carefully reviewed and analyzed. *Id.*

██ On May 12, 1980, the defendant filed a Request for Amended and Additional Findings, the purpose of which was to "suggest the specific issues which should be clarified to indicate the basis for the court's ultimate decision." The court, after considering them, apparently felt that the defendant's suggestions for clarification were valid and would make the basis of its decision more lucid. Therefore, it incorporated the eight amending findings verbatim. Although we do not condone the court's adopting without change the amended find-

ings, we are satisfied from our review of the record that the court thoughtfully reviewed all the evidence and defendant's requests and then exercised its independent judgment in amending its findings of fact. We find no violation of the *Krupp* rule here.

The plaintiff next challenges the court's estimate of the value of the goodwill of the Country Kitchen, Inc., at $18,000. She implicitly argues that this figure should be much higher. However, we have thoroughly reviewed the record and find that there is credible evidence to support the court's findings as to goodwill.

She also challenges the court's findings as to the value of her equity ownership in the Country Kitchen, Inc., and, consequently, the price at which she agreed to sell her stock. In this regard, we note the following.

The plaintiff owned 100 shares, the defendant 140 shares, and the defendant's father 10 shares of the stock in Country Kitchen, Inc. On March 26, 1979, the plaintiff entered into a stipulation and thereby agreed that the fair market value of the assets of Country Kitchen, Inc. would be determined by appraisal of the court, and that thereafter she would sell her shares for a price equal to 45% of the value of the parties' equity. On February 23, 1981, the court was called upon to determine the plaintiff's equity in the business based on the assumption that its tangible and intangible assets, as found on June 11, 1980, were worth $500,000. In determining the plaintiff's equity, the court deducted from the $500,000 figure hypothetical closing costs, including but not limited to real estate broker's commission and attorney fees. The plaintiff argues on appeal that this deduction was erroneous as "obviously" having no bearing on fair market value. This argument misapprehends that the court was determining equity, and not fair market value, on February 23, 1981.

"Market value" may be what a buyer will pay, but "equity" is what an owner has left after debts and other charges are paid upon sale. Black's Law Dictionary 634 (4th ed. 1968); *Des Moines Joint Stock Land Bank* v. *Allen,* 220 Iowa 448, 261 N.W. 912 (1935).

The interpretation of the stipulation was a question of fact for the trial court, based on the language used and at-

tending circumstances. The parties had always assumed a hypothetical sale as of August 1, 1979. The defendant offered competent evidence concerning closing costs in connection with the sale of the business. It was not error for the court to credit this testimony and deduct these hypothetical costs from fair market value to determine equity.

## VI.

Finally, the plaintiff argues that the court erred in dismissing her motion to amend her motion for a new trial. We disagree.

On March 25, 1981, the court entered its final decision. The plaintiff filed a timely motion for new trial, pursuant to V.R.C.P. 59, on April 6, 1981. This motion was denied on April 22, 1981. Thereafter, the plaintiff filed her "Amendment to Plaintiff's Motion for a New Trial," by which she sought leave to amend her motion for new trial by adding additional grounds. This motion was dismissed on several grounds: that there was no motion for a new trial pending which could be amended; that, considered as a second motion for a new trial, it was untimely under V.R.C.P. 59(b); and in any event, that it was not supported by affidavit and there was no legal or factual basis for the motion. This decision is clearly correct on all grounds stated. *Waitt* v. *Waitt*, 137 Vt. 374, 406 A.2d 395 (1979).

*Affirmed.*