### In re C. L. and D. L., Juveniles

[468 A.2d 563]

No. 82-136

Present: Billings, C.J., Hill, Underwood, Peck and Gibson, JJ.

Opinion Filed November 1, 1983

*William D. Wright*, Bennington County Deputy State's Attorney, and *Ralph Sheppard*, Law Clerk (On the Brief), for Plaintiff-Appellee.

*Andrew B. Crane*, Defender General, and *William A. Nelson*, Appellate Defender, Montpelier, for Defendant-Appellant.

*Stephen L. Saltonstall* of *Witten & Carter, P.C.*, Bennington, for Defendants-Appellees juveniles.

**Underwood, J.** This appeal is from an order of the District Court of Vermont, Bennington Circuit, sitting in juvenile session. The order transferred legal custody, guardianship, and residual parental rights of two juveniles, C. L. and D. L., from appellant, Mrs. C., to the Commissioner of Social and Rehabilitation Services (SRS). We affirm the order.

The pertinent facts cover a period of several years, with custody of the children being transferred back and forth between Mrs. C. and SRS. Mrs. C., the juveniles' biological mother, first came to Vermont from Puerto Rico in 1977. Shortly thereafter, SRS contacted Mrs. C. offering a variety of home nursing, counseling, and day care services. These efforts were apparently unsuccessful, and the children were placed in SRS' care from September 1978 until April 1979, under a succession of temporary detention orders from the Bennington District Court.

Mrs. C. was not able to provide adequate care for the children after their return to her in April of 1979. An August 29, 1979, merits hearing disclosed that the children were often left alone, the apartment was inadequately heated, the electricity was shut off, there were no hot water or cooking facilities, broken windows left jagged pieces of glass exposed, the refrigerator was covered with filth, the dwelling was infested with flies, and candles in each room constituted a fire hazard. Based on the foregoing, on September 12, 1979, the district court found the children to be lacking parental care and supervision. At this time the court also found that the children's living situation was not mentally healthy and that they had developed "failure to thrive syndrome." The court mentioned,

somewhat enigmatically, that Mrs. C. had a "thought disorder." The next day, a disposition hearing was held and temporary custody of the children was transferred back to SRS.

Mrs. C. made no apparent efforts to visit the children, and with knowledge that SRS might view it as abandoning the children, she moved to New York City some time in March of 1980. Unrebutted testimony at trial indicated that Mrs. C. had another child while in New York and abandoned it, when two months old, in a hospital parking lot.

In January and February of 1982, the district court held disposition review hearings at the request of SRS to terminate Mrs. C.'s residual parental rights in the children. Mrs. C. was contacted about these hearings and expressed an interest in appearing and contesting the severance of her parental rights. It appears from the record that the hearings were scheduled so as to accommodate Mrs. C. She did not, however, appear at either hearing, although she was represented at both by her attorney, the public defender.

The testimony indicated that Mrs. C. suffered from emotional instability, had repeatedly failed in caring for the children, and had not contacted them for well over a year. Once again, the court found Mrs. C. to be laboring under a "thought disorder." Testimony also revealed that Mrs. C. had lived at the same address in New York for almost a year, had secured an apartment, and was selling clothing door-to-door.

On February 10, 1982, the court ordered that all parental rights in the children be transferred to SRS. It is from this order that Mrs. C. appeals.

Mrs. C. argues that the court below erred by failing to appoint a guardian ad litem sua sponte to protect her interests when there was some evidence of her emotional instability present in the record. We decline to create a right to a guardian ad litem under these circumstances.

Appellant contends that this case is controlled by our recent decision *Guardianship of H. L.,* 143 Vt. 62, 460 A.2d 478 (1983). In *H. L.* we held that the court must appoint a guardian ad litem when (1) a litigant is incompetent, and (2) fundamental rights are involved. *Id.* at 65, 460 A.2d at 479 (citing *In re Raymond,* 137 Vt. 171, 400 A.2d 1004 (1979)). Here, as in *H. L., supra,* it is clear that appellant's right to the

care, custody, and control of her children is a fundamental liberty interest protected by the due process clause of the Fourteenth Amendment to the United States Constitution. *Santosky* v. *Kramer*, 455 U.S. 745, 753 (1982); *Guardianship of H. L.*, *supra*, 143 Vt. at 65, 460 A.2d at 479; *In re N. H.*, 135 Vt. 230, 236, 373 A.2d 851, 856 (1977). The right to the care, custody, and control of one's children, although fundamental, is not absolute and may be overcome by the State's interest, under the doctrine of parens patriae, in ensuring the protection and care of its juveniles. *In re N. H.*, *supra*. See also *Gonyaw* v. *Gray*, 361 F. Supp. 366, 369 (D. Vt. 1973). The State may also legislate under parens patriae for the protection of its juveniles, *In re Delinquency Proceedings Concerning a Certain Juvenile*, 129 Vt. 185, 190, 274 A.2d 506, 510 (1970), as it has done in 33 V.S.A. §§ 631–667.

 The other element articulated in *H. L.*, however, is not present here. *H. L.* concerned a parent hospitalized for a mental condition. The mother in *H. L.* was a patient at the Vermont State Hospital; this raised a significant question as to her legal competency. Furthermore, *H. L.* involved a situation in which appellant's counsel could not communicate effectively with her because of deterioration in her mental condition and asked the court to appoint a guardian ad litem. Therefore, the evidence in *H. L.* revealed two distinct species of incompetency: one of a type involving medical treatment or hospitalization for a mental condition, and the other of a type that prevents a party from effective communication with counsel thus rendering her unable to comprehend the nature of the legal proceedings. See *Morissette* v. *Morissette*, 143 Vt. 52, 463 A.2d 1384 (1983). In the instant appeal, neither of these forms of incompetency is present.

The evidence concerning Mrs. C. indicates emotional instability and irresponsibility in dealing with her children as a parent. There is no evidence of incompetency of a type involving medical treatment or hospitalization for a medical condition. Only the court's unembellished finding that she had a "thought disorder" is available to support any notion of incompetency. This, in the context of a juvenile custody hearing, falls far short of the incompetency found in *H. L.*, *supra*.

■■ Similarly, the second kind of incompetency indicated in *H. L.* is not present here. The record indicates that Mrs. C. understood that SRS was attempting to terminate her parental rights, requested that the hearing be scheduled so that she could attend, and communicated her position to her attorney. Under these circumstances, we feel that our recent decision in *Morissette* v. *Morissette, supra,* controls. Although that case involved a divorce action rather than a juvenile proceeding, the rationale is analogous. In *Morissette,* as here, there was "no evidence which would have put the court on notice that she lacked the capacity to understand the nature of the proceedings." *Id.* at 57, 463 A.2d at 1387. The evidence about Mrs. C. portrays a woman wholly unable to care for her children. Virtually every indication of any "thought disorder" goes hand-in-hand with her inability to provide effective care for her children as a parent. When freed from the responsibility of parenting, Mrs. C. seems to have at least stabilized her own living circumstances.

■ We will not place a duty upon courts hearing juvenile cases to appoint a guardian ad litem for a parent based upon a record indicating only a disability to be a competent parent. The court's inherent power to appoint a guardian ad litem under these circumstances is not the issue before us. See *In re Dobson,* 125 Vt. 165, 167, 212 A.2d 620, 622 (1965) ("[T]he appointment of a guardian ad litem is a power inherent in courts in dealing with those before it who are under disability."). The question here concerns the court's responsibility. Since we are not persuaded that the court had a duty sua sponte to appoint a guardian ad litem under these circumstances, we affirm the decision below.

*Affirmed.*