2011 ME 57

**Abby Lear DESMOND**

v.

**Andrew Scott DESMOND.**

Supreme Judicial Court of Maine.

Argued: April 14, 2011.
Decided: May 10, 2011.

---

S. James Levis, Jr., Esq. (orally), Levis & Ingraham, PA, Saco, ME, for Andrew Scott Desmond.

James B. Bartlett, Esq., Theresa Page, Esq. (orally), James B. Bartlett, PA, York, ME, for Abby Lear Desmond.

Panel: SAUFLEY, C.J., and ALEXANDER, SILVER, MEAD, GORMAN, and JABAR, JJ.

PER CURIAM.

[¶ 1] Andrew Scott Desmond appeals from a judgment of the District Court (York, *Cantara, J.*) denying his motion to change the primary residence of his minor child in connection with his 2007 divorce from Abby Lear Desmond. Andrew contends that (1) the court's findings of fact and its resulting legal conclusions are not supported by the weight of the evidence, (2) the court erred in declining to give special weight to the guardian ad litem's recommended change of primary residence, and (3) the court improperly ordered him to pay all of the guardian ad litem's fees and $5000 toward Abby's $28,000 in attorney fees.[1] Abby cross-appeals on the ground that the court should have required Andrew to pay all of her attorney fees.

[¶ 2] Pursuant to 19–A M.R.S. § 1657(1)(A) (2010), "[a]n order for parental rights and responsibilities may be modified or terminated as circumstances require . . . [u]pon the petition of one or both of the parents." We review the findings of fact in an order on a post-divorce motion for clear error, and the court's ultimate decision for an abuse of discretion or error

---

1. Andrew also claims the court erred when it refused to consider, as adverse evidence, a protection from abuse proceeding dismissed before the parties were divorced. The court's decision to do so was entirely appropriate; it preceded the parties' divorce and was irrelevant to this proceeding. *See* 19–A M.R.S. § 1657 (2010); *Smith v. Padolko,* 2008 ME 56, ¶ 11, 955 A.2d 740, 744 (limiting the inquiry on a post-divorce motion to events that have occurred "since the entry of the most recent decree") (quotation marks omitted).

of law. *Smith v. Padolko*, 2008 ME 56, ¶¶ 9, 14, 955 A.2d 740, 743, 744.

[¶ 3] We have long held that a "substantial change in circumstances ... can justify the modification of the [divorce] decree, and that the overriding consideration whenever a proposed modification is sought is the best interest of the minor child[ ]." *Id.* ¶ 11, 955 A.2d at 744 (quotation marks omitted). Factors to be considered in determining a child's best interest are enunciated in 19–A M.R.S. § 1653(3) (2010).

[¶ 4] In this case, the court did reference the evidence presented in light of some of the best interest factors listed in section 1653(3) to explain why it is in the child's best interest to maintain his primary residence with his mother. We cannot say that the court's factual findings on this issue were clearly erroneous. That we might have made a different determination is not a basis for vacating the court's order. *See Boulos Co. v. McDevitt*, 522 A.2d 1301, 1302 (Me.1987).

[¶ 5] As for the court's financial orders, when, as here, there was no request for findings following the court's entry of its judgment, we infer any findings necessary to support the result that the court reached, as long as those findings are supported by the record. *See* M.R. Civ. P. 52; *Sutherland v. Morrill*, 2008 ME 6, ¶¶ 4–5, 940 A.2d 192, 193–94. The record also indicates that when the guardian ad litem was appointed, based on the parties' agreement, the court ordered Andrew to pay all of the guardian's fees.

[¶ 6] Although we are affirming the judgment, we are concerned that the trial court did not appreciate the urgency created by the child's separation from his father. We direct the court to ensure, by whatever means are necessary, that the contact ordered in the August 10, 2010, judgment occurs. The court's actions may include, if required, appointment of some-one to act in place of Abby, at Abby's expense, if Abby does not cooperate to achieve the effect of the court's order. Specifically, by June 10, 2011, the court must take steps to require Abby to make the arrangements necessary to allow the child to spend eight weeks with Andrew, wherever Andrew lives, during the summer of 2011. In addition, the order requires that the child spend eight weeks with Andrew every summer, fourteen days with Andrew during every Christmas vacation, and either the February or April school vacations with Andrew each year. We were dismayed to learn at oral argument in April that, in nearly two years, the child has had no visits with his father at his father's residence and that during this time, the child had not seen his father except for brief visits related to the father's presence in Maine for this litigation.

[¶ 7] We are also dismayed that the court process took twenty months to resolve this case; the motions were filed early in 2009 but were not reached for hearing until May of 2010, and were not decided until August of 2010. This is an unacceptable delay in a case involving a child's residence and/or contact schedule. The litigation has cost these parties—in addition to the significant legal fees they have separately incurred—thousands of dollars in guardian ad litem fees. This is an extraordinary expense for parties whose combined annual incomes total just over $70,000. Courts hearing family cases are encouraged to cap and/or monitor the costs associated with litigation whenever necessary to protect the child's best interest so that the funds needed to feed, clothe, and educate children are not spent on generating guardian ad litem reports or paying substantial attorney fees.

The entry is:

Judgment affirmed. District Court directed to ensure that its order creating a

summer and school vacation contact schedule with the father is followed by the parties.