2011 VT 91

## Carmela (Limoggio) Iannarone v. Robert W. Limoggio

[30 A.3d 655]

No. 10-054

Present: **Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.**

Opinion Filed August 12, 2011

*James Maxwell*, Brattleboro, for Plaintiff-Appellant/Cross-Appellee.

*David G. Reid* of *David G. Reid, Attorney at Law, P.L.L.C.*, Brattleboro, for Defendant-Appellee/Cross-Appellant.

¶ 1. **Dooley, J.** Wife appeals from a family court order denying a motion to enforce the property division set forth in the parties' original divorce decree. She contends the court abused its discretion by: (1) failing to enforce a provision requiring payment of $150,000 for the marital home; and (2) failing to exercise its equitable power to impose a constructive trust on the home. We conclude that wife's claims are precluded by res judicata and affirm.

¶ 2. The parties were divorced in June 1996, following a thirteen-year marriage. Together they have two children, who are now grown. The parties engaged in extensive post-judgment litigation, part of which is involved in this appeal.

¶ 3. A principal issue of litigation concerned the marital home in the Town of Dover. The stipulated divorce judgment provided that: (1) wife could continue to live in the marital home with the children until the youngest child reached age eighteen, which would occur in June 2005; (2) wife had the option to sell the home after July 1, 1997, and husband had a right of first refusal on any sale; and (3) at the time of any sale (or, if no sale occurred, at the time the youngest child turned eighteen), wife would be guaranteed the sum of $150,000 to be paid by husband. The judgment stated further that title to the home would vest with husband when wife was paid $150,000. The divorce judgment awarded wife title to the home until the youngest child reached age eighteen and required each party to sign all documents necessary to implement this title arrangement. It provided that husband would hold wife "harmless" for a $200,000 balloon payment to be made in July 1997 on a mortgage on the property held by husband's father. The mortgage secured a note the parties had given to husband's father to repay a loan of $200,000 father had made so the parties could purchase and improve the marital home.

¶ 4. Apparently, a dispute arose over title to the home. In July 1997, the court issued a post-judgment order directing husband to execute and deliver a quitclaim deed and transfer tax return for the marital homestead within thirty days, specifying that the draft deed prepared by wife's counsel properly implemented the divorce order. The deed contained three distinct reservations from the grant of title to wife: (1) a right of husband to first refusal; (2) a right of husband to purchase on or before August 1, 1997, for $150,000 minus any unpaid real estate taxes accruing since January 9, 1996, subject to encumbrances of record, and requiring

a $15,000 deposit; and (3) a right of husband to purchase on or after June 4, 2005, for $150,000 minus any unpaid real estate taxes since January 9, 1996, again subject to encumbrances of record.

¶ 5. Although husband's father's note became due in July of 1997, he never sought to collect on it and did not foreclose on the mortgage. The mortgage remained in the land records, undischarged. This fact is significant and controls many later events.

¶ 6. Wife continued to live in the marital residence with the children until 2000, when she moved with them to Brattleboro to be closer to school. As a result, the marital residence became unoccupied and unmaintained, and it deteriorated. It was repeatedly broken into, and many appliances and even parts of the house were stolen. By post-judgment motion, husband sought an order requiring wife to maintain the premises in reasonable repair and to pay property taxes. The court denied the motion because the divorce order did not impose these responsibilities on wife.

¶ 7. In April 2005, wife entered into a purchase and sale agreement to sell the house in its then-current condition for $210,000, but the sale apparently stalled because of the undischarged mortgage held by husband's father. In July 2005, wife filed a motion to enforce, seeking an order requiring husband to deliver to her "good and sufficient deed to the marital homestead, without exceptions or reservations, and . . . [a] discharge or release of his father's recorded mortgage deed against the property." In her motion, wife stated that she had asked husband for the quitclaim deed and discharge from the mortgage in the event that husband did not wish to exercise his right of first refusal to purchase the property. Because the parties' youngest child had reached the age of eighteen years in June, she also alleged that "[husband] has made no tender of the required $150,000 to reclaim title to the property." She stated that because of husband's failures, she did not have the ability to sell the property or the required $150,000 and "has thus been deprived the property settlement awarded to her by this court nine years ago." Husband opposed the motion, arguing that wife should be ordered to quitclaim her interest in the home to him, and, in return, he would be obligated to pay her only $150,000 less the real estate taxes that were unpaid after 1996 and the value of any unreasonable wear and tear on the marital home property.

¶ 8. In March 2006, the family court issued a written decision on wife's motion to enforce, concluding that husband had no obligation to obtain a discharge of his father's mortgage for the benefit of any third-party buyer. The court also found that the terms of the parties' stipulation and the final order did not require wife to reimburse husband for his payment of real estate taxes. Finally, the court ruled that husband had the right to purchase the property, and that wife had the obligation to quitclaim all her interest therein, provided that husband paid the full price of $210,000 less any real estate taxes currently due. If husband did not purchase the property for $210,000, the family court held that wife would "be free to sell the property on such terms as she can arrange." The court failed to conclude that husband would be required to tender $150,000 to wife in exchange for title if the proposed sale for $210,000 fell through. It remained silent on this issue.

¶ 9. Ultimately, the proposed sale for $210,000 did fail, and husband made no attempt to purchase the home. Wife continued to hold title to the property until it came up for a tax sale in 2008 for unpaid property taxes of $26,352. In August 2008, husband purchased the property with a bid of $80,100. The following month, wife moved the family court to enforce the divorce judgment, requiring husband, at a minimum, to pay or guarantee wife was paid $150,000 plus interest from June 4, 2005, when the payment allegedly became due.[1] Husband subsequently moved to dismiss the motion, claiming that it was barred by principles of res judicata and collateral estoppel. The parties agreed to submit the issue on their filings, and the family court issued a written decision in June 2009, concluding "that the terms of the divorce decree are clear, and that [wife] is in fact entitled to $150,000, provided that she tenders a quitclaim deed of her interest in the residence to [husband]." The court further ruled that wife was entitled to interest "from the date that she made clear her

---

[1] At approximately the same time, wife brought an action in superior court raising some of the same claims. Following the family court's decision in 2009, and its later 2010 decision, which we describe in ¶ 10, wife conceded that only one claim remained in the superior court — whether husband had slandered wife's title to the property. This claim turned on the validity of husband's father's mortgage, which wife challenged as fictitious. The superior court ruled that wife should have challenged the validity of the mortgage in the original divorce proceeding. Alternatively, it ruled that the undisputed facts showed that the mortgage was supported by consideration and was not "fictitious."

intention and willingness to transfer title to him on these terms, rather than selling to third parties," and that husband was "entitled to deduct the entire amount of unpaid taxes, from 1996 to present from the amount owed to [wife]." The court also ruled that husband had no obligation to discharge his father's mortgage and the hold-harmless provision required husband to indemnify wife but only if husband's father sought to enforce the debt obligation against wife, which had not occurred. The court did not address husband's res judicata and collateral estoppel arguments.

¶ 10. Between June and August 2009, both parties filed motions to reconsider the June 2009 order and motions for the imposition of a constructive trust over the property and the tax sale proceeds. Following an evidentiary hearing, the family court issued another order in January 2010, ruling on these new motions. Again, the court did not rule on husband's res judicata and collateral estoppel arguments. Explaining its initial decision, the court concluded that wife was *not* entitled to the $150,000 payment because she no longer held any title that she could transfer to husband. The court also rejected wife's claim that she was entitled to an equitable trust on the property, ruling that "her own inaction" in failing to pay property taxes had led to her loss of title through the tax sale. The court further rejected husband's claim for reimbursement of real estate taxes that he had paid over the previous years and for damage to the property allegedly due to wife's neglect. Finally, the court awarded wife attorney's fees and costs totaling $2051. Wife appeals, and husband cross-appeals this order.[2]

¶ 11. On appeal, wife argues: (1) the family court abused its discretion in failing to hold husband accountable for the guaranteed property settlement payment of $150,000 as provided in the final order, payable irrespective of wife's title; and (2) the family court should have invoked its equitable powers to do justice considering husband's failure to tender the property settlement payment to wife and the subsequent purchase of the marital home from the town at a tax sale, all of which required the family court to impose a constructive trust and render complete relief. Husband, in turn, contends that wife's 2005 motion to enforce and the

---

[2] Although husband's cross-appeal appeals from the same order as wife, we understand it to be actually to the court's failure to address his res judicata argument.

court's 2006 decision on that motion preclude the present litigation and appeal and that, even if claim preclusion and issue preclusion do not bar the litigation and appeal, the family court's 2010 decision was correct.

¶ 12. We first consider husband's argument on cross-appeal, whether wife's motion and the appeal of the denial of the motion is barred by claim preclusion — also known as res judicata. Since the result of that consideration disposes of the case, we do not consider the issues raised by wife. Thus, we affirm on a ground different from that relied upon by the family court.

¶ 13. Husband's argument is that the adjudication of, and result in, wife's 2005 enforcement proceeding precludes consideration of the 2008 enforcement action because the theory of the 2008 proceeding was available to her and recognized in 2006.

■ ■ ¶ 14. Courts have long acknowledged that " '[p]ublic policy dictates that there be an end of litigation; that those who have contested an issue shall be bound by the result of the contest, and that matters once tried shall be considered forever settled as between the parties.' " *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 401 (1981) (quoting *Baldwin v. Iowa State Traveling Men's Ass'n*, 283 U.S. 522, 525 (1931)); see *Faulkner v. Caledonia Cnty. Fair Ass'n*, 2004 VT 123, ¶¶ 9, 10, 178 Vt. 51, 869 A.2d 103 ("The doctrine of claim preclusion advances the efficient and fair administration of justice . . . . [P]ublic policy dictates that there be an end of litigation." (quotation omitted)). Claim preclusion "bars the litigation of a claim or defense if there exists a final judgment in former litigation in which the parties, subject matter and causes of action are identical or substantially identical." *Lamb v. Geovjian*, 165 Vt. 375, 379, 683 A.2d 731, 734 (1996) (quotation omitted). Claim preclusion does not require that the claim was actually litigated in an earlier action; rather, the doctrine "bars parties from litigating claims or causes of action that were or should have been raised in previous litigation." *Id.* at 380, 683 A.2d at 734 (quotation omitted). We have noted that the trend in defining what constitutes the same claim or cause of action has been "toward a broader approach . . . requiring a plaintiff to address in one lawsuit all injuries emanating from all or any part of the transaction, or series of connected transactions, out of which the action arose." *Faulkner*, 2004 VT 123, ¶ 12 (quotation omitted).

■ ¶ 15. To summarize, claim preclusion will preclude a claim from being litigated if "(1) a previous final judgment on the merits exists, (2) the case was between the same parties or parties in privity, and (3) the claim has been or could have been fully litigated in the prior proceeding." *In re St. Mary's Church Cell Tower*, 2006 VT 103, ¶ 3, 180 Vt. 638, 910 A.2d 925 (mem.).

¶ 16. The second element of claim preclusion is clearly present here — the parties in the current proceeding, wife and husband, are the same two parties that participated in both the original divorce and in the proceeding initiated by wife's July 2005 motion to enforce and resulting in the family court's March 2006 order.

■ ¶ 17. The other elements require more analysis. We begin with the element that there is a previous final judgment on the merits. Under our rules, "any order from which an appeal lies" is a judgment. V.R.C.P. 54(a). Whether an order is appealable is left to case law. See Reporter's Notes, V.R.C.P. 54. The test of finality "is whether it makes a final disposition of the subject matter before the Court." *Morissette v. Morissette*, 143 Vt. 52, 58, 463 A.2d 1384, 1388 (1983) (quotation omitted). Although we have not confronted this question directly, we have routinely allowed appeals from the disposition of post-judgment motions in family cases. See *Stalb v. Stalb*, 168 Vt. 235, 248, 719 A.2d 421, 429-30 (1998) (considering appeal of post-judgment motion in divorce case and concluding family court did not abuse its discretion in declining to grant post-judgment motion to reopen evidence or amend judgment); *dePeyster v. Kostuck*, No. 2002-242, 2002 WL 34422207, at *1 (Vt. Nov. 27, 2002) (unpub. mem.)[3] (affirming denial of husband's post-judgment motion seeking to prevent sale of certain real property and to revise terms of court's final judgment relating to property). This practice is consistent with the law from other jurisdictions. See, e.g., *Carlisle v. One (1) Boat*, 195 P.3d 1177, 1186 (Haw. 2008) (noting an order is not appealable, even if it resolves all claims against parties, until it has been reduced to separate judgment, but that exceptions to this rule have been recognized with regard to post-judgment orders and ongoing family court cases); *Desmond v. Desmond*,

---

[3] The citation is to an unpublished three-justice decision because many of our appeals from divorce judgments are considered by a three-justice court. We do not cite this decision as precedent, but instead to show that this Court has permitted appeals of post-judgment motions following a final divorce order.

2011 ME 57, ¶ 2, 17 A.3d 1234 (per curiam) (noting Supreme Judicial Court of Maine reviews findings of fact in an order on post-divorce motion for clear error, and court's ultimate decision for abuse of discretion or error of law). Moreover, we have applied claim preclusion in family proceedings. See *Arbuckle v. Ciccotelli*, 2004 VT 68, ¶ 5, 177 Vt. 104, 857 A.2d 324; *Kellner v. Kellner*, 2004 VT 1, ¶¶ 6-13, 176 Vt. 571, 844 A.2d 743 (mem.). Indeed, we have noted " '[t]here is no area of the law requiring more finality and stability than family law.' " *St. Hilaire v. DeBlois*, 168 Vt. 445, 448, 721 A.2d 133, 136 (1998) (quoting *Hackley v. Hackley*, 395 N.W.2d 906, 914 (Mich. 1986)).

¶ 18. We specifically reject wife's argument that claim preclusion should not apply because the doctrine is relevant only in "subsequent cases not in continuing litigation in the same action." This argument is not persuasive because wife's 2008 motion to enforce began a new or "subsequent" case — it was not a continuation of the action that wife began when she filed her 2005 motion to enforce. Under this argument, a party could raise the same post-judgment claim over and over again hoping some judge would finally accept it. Moreover, if we did not treat the court order resulting from wife's 2005 motion to enforce as a final judgment, there would be no way for wife to obtain appellate review of the court's decision. At the time, the family court believed it had fully resolved the controversy between the parties as the issue was presented to it. We hold that the 2006 order was a final appealable judgment, and the first element of claim preclusion is met.

¶ 19. This leaves the third element of claim preclusion. We must determine whether the claim wife asserts in this proceeding is a claim that she already asserted or could have fully litigated in the 2005-2006 proceeding. Wife's current claims were raised in her 2008 motion to enforce portions of the parties' final divorce order, especially provision number eleven, which stated: "At the time of any sale (or if no sale occurs at the time [youngest child] attains the age of 18), [wife] shall be guaranteed the sum of $150,000.00 to be paid to her by [husband]. Thereafter, title will vest with [husband]." All of wife's arguments in the current proceeding seek an outcome where husband is held responsible for the settlement payment of $150,000 provided for in the final divorce order.

¶ 20. Wife's claim that she should be paid $150,000 even though the home property was not sold could have, and should have, been fully litigated in connection with her 2005 motion to enforce. At the time she filed her motion to enforce on July 12, 2005, the only prerequisite to the $150,000 payment specified explicitly in the divorce order had come to pass — that is, the youngest child had reached eighteen years of age. Also, at that time, she had title to the home property and could transfer it to husband. In fact, wife's 2005 motion mentioned that she was owed $150,000 in accordance with the divorce order, stating in pertinent part, that:

> The parties' son . . . became 18 on June 4, 2005, but [husband] has made no tender of the required $150,000 to reclaim title to the property.

> As a result of the forgoing failures and refusals by [husband], [wife] has neither the ability to sell clear title to the marital homestead property, nor the $150,000 required from [husband] for redemption of the title, and thus has been deprived the property settlement awarded to her by this court nine years ago.

Though it mentioned that she was owed $150,000, wife's claim for relief focused on the proposed sale of the marital property for $210,000 and the fact that husband had not cooperated with the sale. In her request for relief, wife failed to ask that she be paid the $150,000 in the event that the sale for $210,000 failed. Instead, her request for relief, submitted to the court in December 2005, asked for the following:

> [Wife] prays that . . . she be specifically authorized to sell the former marital homestead . . . for $210,000.00 . . . ; that she be specifically authorized to pay herself from the proceeds thereof the sum of $150,000.00, plus interest . . . ; that she be specifically authorized to pay herself from the remaining proceeds

the unpaid balance of [husband]'s Child Support Obligations . . . , and that [husband] be specifically ordered to accept the remaining proceeds at the time of sale and deliver, at that time, a duly executed and acknowledged Quitclaim Deed of all of his right, title and interest in the premises, as well as a duly executed and acknowledged release from his father of [wife] and premises from any further lien or obligation under the recorded mortgage referred to in the Final Divorce Order.

¶ 21. Wife's main problem under the theory she chose, as the 2006 decision explained, was that it ran up against husband's father's mortgage. She failed to anticipate this problem and seek relief under the provision requiring husband to pay $150,000 whether or not there was a sale to a third party. As a result, the family court decision failed to specifically address whether husband owed wife $150,000 if the proposed sale of the home for $210,000 failed.

¶ 22. Although wife did not specifically assert the claims she raised in this case in the 2005-2006 proceeding, this is a situation where a party could have, and should have, raised the current theory of recovery in a prior proceeding and failed to do so. All of the elements of the claims were present in 2005, and there was no impediment to raising them. The third element of claim preclusion is thus present.

¶ 23. We hold that claim preclusion now bars wife's reassertion of the claim that husband is obligated to pay her $150,000 under the final divorce order. Although the family court did not rule on this basis, we may affirm on an alternative ground. See *In re P.J.*, 2009 VT 5, ¶ 9 n.5, 185 Vt. 606, 969 A.2d 133 (mem.). In this case, the ground for our decision was fully argued by the parties.

*Affirmed.*