2012 ME 77

**Abby Lear DESMOND**

v.

**Andrew Scott DESMOND.**

Supreme Judicial Court of Maine.

Argued: May 10, 2012.
Decided: June 14, 2012.

---

S. James Levis, Jr., Esq. (orally), Levis & Ingraham, PA, Saco, for appellant Andrew Scott Desmond.

James B. Bartlett, Esq. (orally), and Theresa Page, Esq., James B. Bartlett, PA, York, for appellee Abby Lear Desmond.

Panel: SAUFLEY, C.J., and ALEXANDER, SILVER, MEAD, GORMAN, and JABAR, JJ.

SAUFLEY, C.J.

[¶ 1] Andrew Scott Desmond appeals from a post-judgment order entered in the District Court (York, *Cantara, J.*) following multiple case management conferences intended to achieve a summer visit between him and his son at Andrew's military base in Japan. Although Andrew ultimately declined to effectuate a summer visit, he appeals from the court's order determining that the visit could not occur and terminating the services of the guardian ad litem. We affirm the order.

## I. BACKGROUND

[¶ 2] Andrew Desmond is a United States Marine. He has been stationed, during the course of the current proceeding, in Okinawa, Japan; however, he anticipates being transferred to duty in the United States sometime this summer. He and Abby Lear Desmond were married in Massachusetts in December of 2000, had a son in January of 2003, and were divorced on March 22, 2007. The divorce judgment, which incorporated the parties' comprehensive settlement agreement, awarded the parties shared parental rights and responsibilities. The settlement agreement provided that the child would have primary physical residence with his mother "for the time being," and that no set schedule for contact with his father was anticipated, apparently as a result of Andrew's anticipated assignments in other countries with the Marines. The judgment required Andrew to pay regular child support. Abby and her son resided in Maine at the time of the divorce.

[¶ 3] In January and March of 2009, Andrew and Abby filed motions to modify the divorce judgment. Abby sought to have the child support increased. Andrew sought to have their son live primarily with him and his new wife and child on base in Okinawa. Andrew also sought the appointment of a GAL, which the court granted. The court held a two-day hearing on the competing motions to modify on May 10 and 11, 2010.

[¶ 4] Following the hearing, the court declined to order primary physical residence to Andrew but ordered that the child have regular and meaningful contact with him. Andrew appealed, and we affirmed the court's judgment. *See Desmond v. Desmond (Desmond I)*, 2011 ME 57, ¶¶ 1, 6, 17 A.3d 1234. In our opinion, having heard at oral argument that the court-ordered contact with Andrew had not occurred, we noted with concern that the child had not had any substantial visits with his father for a significant period of time. *Id.* ¶ 6. We urged the court on remand to act quickly "to require Abby to make the arrangements necessary to allow the child to spend eight weeks with Andrew, wherever Andrew lives, during the summer of 2011." *Id.*

[¶ 5] On remand, the court promptly scheduled a status conference to assure that a summer visit occurred. Andrew and Abby initially agreed that their son's eight-week visit with Andrew would begin on June 27, 2011, and end on August 22, 2011.

[¶ 6] Despite the court's best efforts, including holding four status conferences between May 26 and June 22, that visit did not occur. Andrew ascribes the result to a delay in the arrival in Okinawa of critical paperwork related to his son's visit. The military required the medical paperwork, generated in the United States, to be sent to the base in Okinawa for approval before the child arrived. The schedule became complicated when the naval base in Kittery provided Abby with a packet of documents

that were apparently not originals, as was required by Okinawa military officials. As soon as Andrew notified the court that the documents that had been sent were unacceptable because they were photocopies, the originals were sent through an expedited mail process suggested by Andrew and arrived on the day that Andrew had identified as the deadline for their submission.

[¶ 7] Although Andrew places the blame on Abby for the difficulties with the documents, the record reflects that the court and Abby, with assistance of counsel, made reasonable efforts to assure that the required paperwork was received on time. It also reflects that the documents were, in fact, received on the final possible day for the scheduled visit to occur, and that Andrew's own duty schedule, and his current wife's responsibilities, apparently prevented them from delivering the documents to the correct office by 4:00 p.m. on that day. Sadly for the child, the last-minute arrival of the paperwork became the basis on which no summer visit occurred.

[¶ 8] By June 15, 2011, when the court held its third case management conference regarding the summer 2011 visit, the original deadline for the paperwork's arrival had passed and Andrew had not identified a new date for the child's arrival. The delay in the medical paperwork appears only to have affected the week in which the child could arrive on the base in Okinawa. The child's visit had been timed by Andrew to coincide with a reduced duty schedule that he had arranged for during those weeks. The delay did not affect the length of the possible visit; nor did it alter the fixed weeks of Andrew's reduced hours. Thus, it appears that a delay in the child's arrival would only have affected the

visit in such a way that Andrew would have had less time with the child during the later weeks of the visit. It would not, however, have prevented the visit, and several weeks of the child's visit could have overlapped with Andrew's reduced duty commitments. At no point did Andrew mention the opportunity for the child to get to know his stepmother and half-siblings. Instead, on June 15, the court asked Andrew "where are we in terms of getting [the child] to see his dad," to which Andrew replied, "It isn't gonna happen."

[¶ 9] Disturbed that the child would once again not have a summer visit with his father, the court offered to contact military personnel or judicial staff on Andrew's behalf. Andrew declined the offer. Andrew also had previously indicated that he could not afford to accomplish his son's visit unless the court amended its August 2010 order to remove the requirement that he pay $5,000 towards Abby's attorney fees.

[¶ 10] Abby indicated that she would support having their son visit Andrew for eight weeks, no matter when it occurred during the summer, as long as there was a plan for the child to keep up with his school work if school were to begin before he returned. Andrew emphasized that he had been given a special assignment that allowed him "to not be engaged fully at work" but that the assignment was only for the eight-week period previously agreed upon.[1] Again, in order to explore a creative solution, the court gave Andrew additional time to consider his options. The court scheduled yet another conference to "hear definitively from [Andrew]

---

1. Although Andrew's special duty assignment is not fully developed in the record, apparently he had asked his commanding officers to be "taken out of rotation" for the duration of his son's visit, which would "enable him informally to spend more time with his son than a normal business workday."

where he stands regarding a summer visit."[2]

[¶ 11] The court held its fourth and final status conference on June 22, 2011. Andrew indicated that his superiors did not oppose his son visiting later in the summer and that they saw the issue as a family matter. However, he reiterated that his reduced duty schedule could not be changed and would no longer coincide precisely with his son's visit.

[¶ 12] When asked by the court if he was prepared to have his son visit for a shorter time period at the end of the summer that would include the August weeks as originally planned, or whether he would be prepared to have his son visit for the full eight weeks starting later in the summer, Andrew answered "no" to both questions.

[¶ 13] The court, having offered to assist Andrew with military officials, and having heard Andrew's unwillingness to have either a later visit or a shorter visit, still urged Andrew to find a way to have the visit occur and directed the parties to formulate their own proposals for a summer visit. Abby submitted an eight-week proposal. Other than a letter from counsel objecting to the proposals that had been made previously, Andrew did not submit a new proposal for a summer visit.

[¶ 14] The court issued an order on June 30, 2011, which summarized the four status conferences and concluded, "In rejecting two proposals for a visit, and by not proposing his own counter proposal, [Andrew] effectively shuts the door to any summer visit in Japan by his son. This is regrettable." Additionally, the court concluded that the services of the GAL were no longer required and relieved her of her duties. The court stated that all other provisions of its August 10, 2010, order, setting a visitation schedule between Andrew and the child, would remain in full force and effect.

[¶ 15] Although Andrew sought amended and additional findings and requested modification of the court's order, pursuant to M.R. Civ. P. 52(b), he did not, even in his objections to the court's order, suggest that he had proposed an alternate schedule for a summer visit. The court denied the motion for findings. Andrew now appeals from the court's order, apparently taking exception to the court's language in summarizing the status conferences.[3] Andrew also appeals the court's decision to relieve the GAL of her duties. Abby asks that we assess treble costs and attorney fees against Andrew for filing a frivolous appeal, pursuant to M.R.App. P. 13(f).

## II. DISCUSSION

### A. The Missed Visit

[¶ 16] The trial court's role, on remand, was to ensure that the parties did whatever was necessary to allow their son to spend time with his father during the summer of 2011. *See Desmond I*, 2011 ME 57, ¶ 6, 17 A.3d 1234. The record reflects that the court did everything in its

---

2. At the end of that conference, the GAL reminded the court that it had capped her fees at $500 and that they were, at the time, over $300. The court told the GAL to do what she could within the cap and if it needed to be raised they could discuss it at the next hearing.

3. The case management conferences were not testimonial. To the extent that the court made *factual* findings regarding Andrew's unwillingness to have his son visit later in the summer or for a shorter time, the record, including Andrew's own statements, fully supports those findings. For the most part, however, the court's conclusions are more in the nature of recitations of process than factual findings.

authority to effectuate that visit. Andrew's appeal, separate from the issue related to the GAL, appears to be a challenge to the court's failure to conclude that Abby was responsible for the failed visit. The record, however, supports the court's conclusions. The court did not err in determining that Andrew's decision not to propose an alternate schedule for the visit was "regrettable." We discern no error in the court's procedures, findings, or conclusions.

### B. The Denial of Andrew's Rule 52(b) Motion

[¶ 17] We review a ruling on the substance of a Rule 52(b) motion for an abuse of discretion. *See Roberts v. Roberts,* 2007 ME 109, ¶ 6, 928 A.2d 776; *see also Sewall v. Saritvanich,* 1999 ME 46, ¶¶ 9–10, 726 A.2d 224.

[¶ 18] The court did not abuse its discretion in denying Andrew's motion because its order contained an accurate account of the four status conferences. Other than dismissing the GAL, the court's order simply recounted what had occurred at the status conferences, recognized that a summer visit was not going to occur, and stated that the court's original visitation schedule, affirmed in *Desmond I,* 2011 ME 57, ¶ 6, 17 A.3d 1234, remained in effect.

[¶ 19] Additionally, in order to be successful on appeal, an appellant must not only demonstrate error, "the appellant must show prejudice caused by the error." *Greaton v. Greaton,* 2012 ME 17, ¶ 2, 36 A.3d 913. When an appellant does not establish a correlation between the court's rulings and a specific outcome in the judgment that is adverse to his interest, we are not presented with the necessary foundation to vacate the decision. *See id.* ¶ 7.[4]

[¶ 20] Andrew has failed to show prejudice in the court's order. We decline to set aside any of the court's recitation of process, findings of fact, or conclusions.

### C. Termination of the Guardian ad Litem

[¶ 21] We review the dismissal of a GAL for an abuse of discretion. *See* 19-A M.R.S. § 1507(1) (2011); *see also Coppersmith v. Coppersmith,* 2001 ME 165, ¶ 4, 786 A.2d 602. The statutory factors the court must consider in appointing a GAL, *see* 19-A M.R.S. § 1507(1)(A)-(H), can also be instructive in determining when a GAL's services are no longer needed.

[¶ 22] Here, the GAL had provided thorough information to the court for the original trial on the motions to amend the divorce judgment. The court had already capped the fees of the GAL and was notified that the GAL was nearing that cap. Andrew had previously asked the court for financial relief in paying Abby's attorney fees and cited financial limitations in discussing the potential visit. It was not an abuse of discretion for the court to consider the financial resources of the parties in making its determination to dismiss the GAL. *See id.* § 1507(1)(D).

---

4. We only decide cases "that involve justiciable controversies." *Lewiston Daily Sun v. Sch. Admin. Dist. No. 43,* 1999 ME 143, ¶ 12, 738 A.2d 1239. Justiciability requires a real and substantial controversy, a controversy that may be resolved through a judgment of the court. *See Halfway House, Inc. v. City of Portland,* 670 A.2d 1377, 1379 (Me.1996). When, on the facts of the case, "no actual, affirmative relief can be granted, [a party] has not presented a justiciable issue" for determination. *Finn v. Finn,* 517 A.2d 317, 319 (Me.1986). Accordingly, had Andrew, who did not dispute the court's conclusion that the visit could not occur, appealed only the court's procedural recitations, the appeal would likely have been dismissed. The order terminating the Guardian's services leads us to accept the appeal from that order, and to address Andrew's additional arguments.

[¶ 23]  The order of the court terminating the services of the GAL is affirmed, and the order is otherwise affirmed in all respects. We decline to consider sanctions on this record.

The entry is:

Judgment affirmed.