ALEXANDER, J., concurring in part and dissenting in part.
 

 [¶21] I concur in those portions of the Court's opinion affirming the trial court's determinations regarding parent/child contact, child support, and the allocation of attorney fees. I respectfully dissent from that portion of the Court's opinion affirming the trial court's disregard of the payment caps and equal allocation of payment responsibility for guardian ad litem fees, which were specified in previously agreed-to
 orders and acknowledged at the hearing.
 

 [¶22] The development of practice in the Family Division over the past two decades has seen increasing numbers of guardian ad litem appointments, usually by magistrates, sometimes by judges, to evaluate families and provide advice to the parties and the court as to resolutions that might serve the best interests of the children involved. In early practice, most guardian ad litem appointment orders included only vague and general guidance as to the tasks the guardians ad litem were to perform and set no caps on the fees guardians ad litem might charge for their services.
 

 [¶23] These open-ended orders led to significant abuses, with some guardians ad litem performing tasks unanticipated by the parties and/or seeking payment for fees that sometimes were well beyond parties' ability to pay. These abuses, particularly to middle-income litigants, were documented in our opinions in
 
 Douglas v. Douglas
 
 ,
 
 2012 ME 67
 
 , ¶¶ 10-12, 19-28,
 
 43 A.3d 965
 
 , and
 
 Desmond v. Desmond
 
 ,
 
 2011 ME 57
 
 , ¶ 7,
 
 17 A.3d 1234
 
 . Following those opinions, the courts adopted form guardian ad litem appointment orders, such as were approved in this case, that (1) required consideration of parties' ability to pay, (2) specified the rates to be charged, (3) set strict caps on payment and hours to be worked, and (4) allocated payment responsibility between the parties. These orders were supported by rules, adopted in 2015, that confirmed the importance of the fee limitations and payment responsibility allocations set in the form guardian ad litem appointment orders. Maine Rules for Guardians Ad Litem (Tower, 2018).
 

 [¶24] Here, the guardian ad litem claimed to have worked hours and sought payment for fees far in excess of the caps set in the appointment orders. The history of the guardian ad litem's appointment, the payment cap, and the fee sharing arrangement is addressed below.
 

 [¶25] After the competing post-judgment motions at issue in this appeal had been filed, the court entered several orders reflected in the docket entries. One of those orders, entered February 2, 2017 (
 
 Ham-Thompson, M.
 
 ), was an expanded appointment order for a guardian ad litem.
 
 See
 
 M.R.G.A.L. 4(a)(3) and 4(b)(4)(D)(iii)(a). Maine Rule for Guardians Ad Litem 4(b)(4)(A) requires that such an appointment order "specify the guardian ad litem's length of appointment; duties, including the filing of a written report ...; and fee arrangements, including hourly rates, timing of payments to be made by the parties, and the maximum amount of fees that may be charged for the case without further order of the court."
 

 [¶26] The February 2 order, entered on the standard court guardian ad litem appointment form, complied with M.R.G.A.L. 4(b)(4)(A). The order specified a $120 hourly rate for the guardian ad litem, a 20-hour cap on the guardian ad litem's work, and a maximum amount of fees to be charged of $2,400. The order required that each party pay half of the fees-$1,200. The order also specified that the guardian ad litem would not be expected to travel to Connecticut, where Christopher McMahon resided.
 

 [¶27] Three months later, on May 1, 2017, the court (
 
 Mulhern, J.
 
 ), again utilizing the standard court form, amended the original guardian ad litem appointment order particularly to authorize the guardian ad litem to travel to Connecticut. The order recognized that the guardian ad litem's travel time to and from Connecticut would be compensated at a rate of $50 per hour; extended the cap on the guardian ad litem's hours by ten hours; and expanded the payment obligation for the guardian ad litem's fees by $1,000 for each party. As a
 result of these amendments, each party's specified total payment obligation became $2,200, with the total fees to be paid to the guardian ad litem to be "no more than" $4,400.
 

 [¶28] The case file includes a brief order of the court (
 
 Ende, J.
 
 ) purporting to amend the May 1 guardian ad litem appointment order to remove the Connecticut travel authorization and to direct the guardian ad litem to call one of the children in Connecticut twice before August 1, 2017. That order, dated August 31, 2017, also included a notation by the court (
 
 Ende, J.
 
 ) dated September 1, 2017, stating, "vacated as moot when signed." Neither the August 31 amendment order nor the September 1 order vacating the August 31 order as moot is reflected anywhere in the docket entries.
 

 [¶29] September 1, 2017, was the last day of the court's hearing on the various motions. At that hearing, the court, the guardian ad litem, and the parties discussed payments due the guardian ad litem. The guardian ad litem noted that she had not traveled to Connecticut as anticipated by the May 1 amended appointment order. The guardian ad litem then said that "the day one bill goes through last Friday." Whatever document was referenced was not marked as an exhibit. The guardian ad litem then referenced the appointment orders: "I think that they were of $2,400 total with the parties each paying half. No, 4,800 total, right, because they were each 24, is that right?"
 

 [¶30] After the guardian ad litem expressed confusion as to the amounts authorized in the appointment orders, Christopher McMahon's counsel offered, "I can make this probably simple.... I've reviewed the bill. And there's really no objection I can make to it." The payment cap in the final appointment order was $4,400, not $4,800 as referenced by the guardian ad litem.
 

 [¶31] The transcript includes no suggestion by the guardian ad litem that she was seeking payments in excess of the payment cap set in the May 1 order, no justification offered for payments in excess of the cap, and an express acknowledgement by the guardian ad litem that the parties are "each paying half." The September 1 on-the-record discussion certainly could not have referenced the guardian ad litem's bill submitted to the court around September 11, 2017, as the Court's opinion suggests. Court's Opinion ¶ 17.
 

 [¶32] Following discussion of the amount due, the court, apparently not having referenced the appointment orders or heard the guardian ad litem's "each paying half" testimony, asked, "is there an agreement as to how to split it?" Counsel for Tanya McMahon then observed, "It is-I think-is subject to reallocation, isn't it?" After the court asked, "Do the parties intend to be subject to reallocation?" counsel for Christopher McMahon observed, "I don't remember. I'll just let the order speak for itself." Counsel's statement indicated his view that the agreed-to order providing for the equal sharing of costs remained in effect. The guardian ad litem then observed that "mom has paid more" and that "I'd like to get paid ... I'm willing to talk to the parties about this, what's owed." Counsel for Christopher McMahon then responded, "So we understand. An additional submission may be made."
 

 [¶33] No additional filings or submissions are referenced in the docket entries, and no other actions or amendments to the guardian ad litem appointment orders appear in the file prior to the court's November 13, 2017, order that is the subject of this appeal. Thus, as of the time the court rendered its decision, the outstanding and effective guardian ad litem appointment
 orders, pursuant to M.R.G.A.L. 4(b)(4)(A), specified a maximum fee that may be charged without further order of the court of $4,400 and specified that each party pay a total of $2,200 toward the guardian ad litem fees.
 

 [¶34] Disregarding the governing guardian ad litem appointment orders, the court's final order authorized total payments to the guardian ad litem of $7,974.71, nearly $3,600 in excess of the final spending cap set in accordance with the Rule 4(b)(4)(A) and more than triple the $2,400 spending cap agreed to before the amendment that contemplated the travel to Connecticut that ultimately did not occur. The final order directed Christopher McMahon to pay the guardian ad litem over $3,400 in addition to the $1,700 that the court recognized that Christopher McMahon had already paid to the guardian ad litem. That final order effectively set aside the agreement for equal sharing of costs in the original guardian ad litem appointment orders and required that Christopher McMahon pay approximately $2,900 more than the cap of $2,200 on his payments set in the May 1, 2017, amended order.
 

 [¶35] Neither the court's findings nor the record contains any justification for the guardian ad litem to perform work in excess of the thirty hours specified in the guardian ad litem appointment orders or to charge fees in excess of the total of $4,400 authorized in the amended guardian ad litem appointment order. In fact, because the guardian ad litem did not travel to Connecticut, as contemplated by the May 1, 2017, amended order, there is a serious question as to whether there was authority to exceed the $2,400 cap set in the original guardian ad litem appointment order before the change authorizing travel to Connecticut. However, for purposes of this opinion, we can assume that the hours cap of thirty hours and the fees cap of $4,400 govern the work authorized and payments that can be approved for the guardian ad litem. At the hearing, Christopher McMahon's counsel acknowledged and agreed to the $4,400 or $4,800 payment obligation with "each paying half."
 

 [¶36] Without providing the parties with notice or an opportunity to be heard, or any findings justifying its actions, the final court order disregarded the earlier orders setting limits on the work authorized and payments to the guardian ad litem. The final order, in effect, signified a return to the abusive, open-ended guardian ad litem fee-setting practices that prevailed prior to the
 
 Douglas
 
 and
 
 Desmond
 
 opinions and the reforms that followed those opinions.
 

 [¶37] The Court's opinion, addressing the issues on appeal, states that "Christopher contends that it was error for the court to order him to pay a portion of Tanya's attorney fees and to apportion more than half of the guardian ad litem fees to him. Christopher argues that the court erred by finding that he was able to afford such payments." Court's Opinion ¶ 13. Despite recognizing that the guardian ad litem's excessive fee request was not submitted until ten days after trial, the Court supports its decision by asserting that "the appellant did not challenge the total amount of the guardian ad litem's fees at trial and is not raising any issue regarding the final amount of the guardian ad litem's fees in this appeal. Nonetheless, the dissent
 
 sua sponte
 
 raises the issue." Court's Opinion ¶ 17.
 

 [¶38] Christopher McMahon is unrepresented in this appeal. During the hearing, McMahon's then-counsel and the guardian ad litem recognized the continuing existence of the $4,400 or $4,800 payment cap and the continuing validity of the agreed equal fee-sharing arrangement. The concern in this opinion is the trial court's
 
 sua
 

 sponte
 
 act, without any on-the-record request from the guardian ad litem and without specific findings supporting its unilateral action, altering the fee cap and fee sharing arrangement acknowledged by the guardian ad litem at hearing.
 

 [¶39] Christopher McMahon sufficiently preserved for appeal his objections to the payment mandate in his appeal documents by generally objecting to the guardian ad litem's payment mandate, when the general objection is combined with his then-counsel's and the guardian's statements on the last day of the hearing.
 

 [¶40] Even if the appeal filing and the on-the-record statements are viewed as insufficient to preserve objections to the disregard of the negotiated cap and equal sharing agreement, the trial court's disregard of the orders setting payment caps and specifying the fee sharing arrangement, without providing the parties with notice and an opportunity to be heard, constitutes obvious error.
 

 [¶41] We have held that for us to vacate a judgment based on the obvious error standard of review, "there must be (1) an error, (2) that is plain, and (3) that affects substantial rights"; if those conditions are met, we have indicated that we will exercise our discretion to notice an unpreserved error if we also conclude that (4) the error seriously affects the fairness and integrity or public reputation of the judicial proceedings.
 
 State v. Fahnley
 
 ,
 
 2015 ME 82
 
 , ¶ 15,
 
 119 A.3d 727
 
 ;
 
 accord
 

 Truman v. Browne
 
 ,
 
 2001 ME 182
 
 , ¶ 12,
 
 788 A.2d 168
 
 ;
 
 Morey v. Stratton,
 

 2000 ME 147
 
 , ¶¶ 10 & n.3, 11,
 
 756 A.2d 496
 
 ;
 
 Scott v. Lipman & Katz, P.A.,
 

 648 A.2d 969
 
 , 974-75 (Me. 1994) (applying obvious error review in civil cases).
 

 [¶42] The trial court's disregard of the previously agreed to and court approved payment caps and fee sharing arrangement, requiring Christopher McMahon to pay more than double his agreed-to commitment without advance notice and opportunity to be heard and without findings justifying rejection of the prior agreed to orders, meets our criteria to vacate due to obvious error. With the past problems that had afflicted guardian ad litem fee-setting and collection practices, problems that the Court had adopted orders and rules to correct, the trial court should not have allowed the guardian ad litem to invite it to return to the past, discredited fee assessment and collection practices.
 

 [¶43] I would vacate the portion of the trial court's judgment regarding approval of guardian ad litem fees and imposition of payment obligations on Christopher McMahon and remand with direction that the guardian ad litem appointment order's limitation on payments of $4,400 with equal sharing of payment obligation by the parties be enforced. With this change, Christopher McMahon would be obligated to pay $500 in addition to the $1,700 that the final order recognized he had already paid toward the guardian ad litem fees.