2003 VT 56

**Craig JOHNSTON v.
Sheryl WILKINS,
Thomas Dandurand and Catamount
Veterinary Services**

[830 A.2d 695]

No. 02-356

¶ 1. June 13, 2003. This appeal concerns a dispute between sibling veterinarians. Both plaintiff Craig Johnston and defendant Sheryl Wilkins appeal from the superior court's order reforming the parties' noncompetition agreement, which was part of a stipulated settlement and court order in a prior lawsuit between the parties. Because we conclude that the doctrine of res judicata precludes either party from collaterally attacking the noncompetition agreement, at least without a demonstration that the criteria of V.R.C.P. 60(b) have been met, we reverse the superior court's reformation order without addressing the reasonableness of the agreement. Further, because we conclude that Wilkins violated the agreement, and that Johnston was entitled to injunctive relief, we remand the matter for the superior court to award Johnston reasonable attorney's fees.

¶ 2. The parties' father was a veterinarian who began his practice in Jeffersonville, Vermont in 1956. Johnston graduated from veterinary school in 1982 and took over his father's practice two years later. Shortly thereafter, Wilkins joined the practice. She and her brother formed a partnership and ran the practice together during the next fifteen years. In 1998, the parties' relationship began to deteriorate, and dissolution discussions commenced. Wilkins stopped working at the clinic in 1999 after she was diagnosed with cancer and began treatments for the disease. Discussions

regarding dissolution of the partnership stalled, and Wilkins filed suit against Johnston.

¶ 3. On August 10, 2000, during the trial in that action, the parties reached a settlement agreement. The agreement provided that Johnston would buy out Wilkins' half-interest in the veterinary practice, including its goodwill, for $25,000 and would deed her his half-interest in their joint real estate, valued at $41,500. In return, Wilkins agreed "not to conduct a small animal veterinarian practice within a 20 mile radius of the village of Jeffersonville VT for 5 years" from the date of the agreement. The stipulated settlement, which was incorporated into the court's order resolving the litigation between the parties, required the parties to exchange documents within thirty days to effectuate the agreement. On September 11, 2000, at the closing on the real estate, the parties signed a covenant not to compete in which Wilkins agreed not to "compete against Johnston, in the practice of small animal veterinary medicine, until after August 10, 2005, directly or indirectly (without the written consent of Johnston) within a twenty (20) mile radius from the Village of Jeffersonville, Vermont."

¶ 4. In February 2001, Wilkins began working for Thomas Dandurand, a veterinarian who operated a practice in Sheldon Junction, Vermont under the trade name of Catamount Veterinary Services (hereinafter Catamount). The following month, Johnston's attorney wrote Wilkins' attorney a letter stating that Wilkins was violating the covenant not to compete by working at Catamount. When Johnston did not receive an immediate response from Wilkins, he filed suit, seeking to enforce the noncompetition agreement. Wilkins answered the complaint by denying that Catamount was within the protected area established by the parties' agreement. In September 2001, following an evidentiary hearing, the superior court denied Johnston's request for a preliminary injunction, ruling that (1) there was a significant factual dispute as to whether Catamount was outside the protected area; (2) the covenant not to compete was so broad that it might not be enforceable; and (3) there appeared to be an adequate remedy at law for damages. In January 2002, following another evidentiary hearing, the superior court found that Catamount's office was 18.8 miles from Jeffersonville on a direct line, and that, therefore, Wilkins would be in violation of the covenant if it were enforceable. The court denied Johnston's motion for an attachment of Wilkins' property, however, stating that it was unclear whether the parties' agreement was enforceable and thus whether Johnston would be the prevailing party at the final hearing on the merits. Wilkins, who had stopped working for Catamount in August 2001, began working there again in February 2002.

¶ 5. The final hearing took place in May 2002. Johnston produced expert witnesses who testified that both the twenty-mile radius and the five-year time limit set forth in the parties' agreement were reasonable. Following the hearing, the court first rejected Wilkins' argument that the twenty-mile distance should be measured by highway miles rather than a straight line. The court determined that the term "radius" chosen by the parties unambiguously referred to a straight line drawn, in any direction, from the Jeffersonville center point. Nevertheless, relying on the evidence presented by Johnston's experts, the court ruled that the twenty-mile radius was not commercially reasonable and thus was unenforceable. In the court's view, Johnston's own exhibits demonstrated that his core area of trade, wherein he derived eighty percent of his business, was a smaller area that did not include Catamount. Accordingly, the court reformed the parties' agreement by establishing the protected area as the

irregular line denoting Johnston's core area of trade.

¶ 6. Although Wilkins was working at a veterinary clinic outside Johnston's core trade area, the court determined that the parties' agreement prevented Wilkins not only from practicing in that area but also from actively seeking customers who resided within that area. The court concluded that any violation of the agreement by Wilkins thus far had been de minimis, and that Johnston had "utterly and completely" failed to establish any actual damage to his practice. Nonetheless, the court granted Johnston's request for a permanent injunction to prevent potential harm to his practice by prohibiting Wilkins from seeing customers who resided within Johnston's core area of trade and were not already established Catamount customers. Finally, the court denied Johnston's request for attorney's fees, ruling that any violation of the agreement thus far had been de minimis, and that Johnston was in a far better position than Wilkins to pay for his attorney's fees.

¶ 7. On appeal to this Court, Johnston argues that (1) certain findings made by the superior court are clearly erroneous; (2) the court erred in reforming the parties' agreement because the doctrine of res judicata precluded the court from reviewing the agreement for reasonableness, and, in any event, the terms of the agreement were reasonable; (3) the court erred by failing to award him attorney's fees; (4) the court should have extended the duration of the noncompetition agreement for an additional two years; and (5) the court erred by not awarding him at least nominal damages and attorney's fees for Catamount's intentional interference with the parties' agreement. In her cross-appeal, Wilkins argues that the superior court erred by ruling that the parties' noncompetition agreement prohibited her from soliciting customers who reside within Johnston's core trade area, even if she was practicing outside that area.

¶ 8. We conclude that the doctrine of res judicata precluded the superior court from reforming the parties' noncompetition agreement, and thus we need not review the court's determination that the agreement is commercially unreasonable. The parties' previous lawsuit ended in a stipulated settlement that was incorporated in the court's final judgment disposing of the matter. Therefore, the stipulated settlement has the preclusive effect of a final judgment. See *Lamb v. Geovjian*, 165 Vt. 375, 381-82, 683 A.2d 731, 736 (1996) (rejecting argument that stipulated settlement cannot be given preclusive effect of final judgment); *Schlaeppi v. Del. Trust Co.*, 525 A.2d 562, 565 (Del. Ch. 1986) (holding that court-approved settlement "has the same *res judicata* effect as a final judgment on the merits"). Unappealed final judgments may be disturbed only pursuant to the criteria set forth in V.R.C.P. 60(b).

¶ 9. Wilkins contends, however, that we should not apply res judicata here because (1) Johnston failed to preserve his res judicata argument; (2) the final covenant not to compete was not incorporated into the court's order resolving the parties' initial litigation; and (3) neither the subject matter nor the causes of action in the two proceedings was identical. None of these arguments is availing. First, in the hearing on Johnston's request for a preliminary injunction, Johnston plainly argued before the superior court that the parties' agreement had been incorporated into a final court order that was entitled to preclusive effect under the doctrine of res judicata. Second, the parties' agreement *was* incorporated into a court order. The August 10 stipulation signed by the court provided that "Wilkins and her affiliates covenant not to conduct a small animal veterinarian practice within a 20 mile radius of the village of Jeffersonville VT for 5 years from this date." Another provision of the

August 10 stipulation required the parties, within thirty days, to exchange documents to "effectuate *this* agreement including ... [the] covenant not to compete." (Emphasis added.) Thus, notwithstanding the different terminology in the August 10 stipulation and the September 11 noncompetition agreement, the parties' plain intent was for the September 11 covenant to put into effect the August 10 settlement agreement entered into by the parties and incorporated into the court's final order.

¶ 10. Third, we reject Wilkins' argument that the subject matter and causes of action of the two proceedings were not substantially identical insofar as the first one concerned the parties' dissolution of their partnership and the second concerned the reasonableness of the noncompetition agreement. See *In re Cent. Vt. Pub. Serv. Corp.*, 172 Vt. 14, 39, 769 A.2d 668, 687 (2001) (res judicata is broader than issue preclusion in that it applies both to those issues that were litigated and those that should have been litigated in prior proceeding; it requires, however, substantially identical parties, subject matter, and causes of action). The parties' noncompetition agreement was an integral part of their dispute over how to dissolve the partnership. The settlement agreement resolving the litigation reflected that fact. Hence, absent a showing that the order incorporating the agreement should be set aside based on criteria contained in Rule 60(b), Wilkins was precluded from collaterally attacking the agreement, and the superior court erred in reforming it.

¶ 11. Having determined that the superior court erred in reforming the parties' agreement, we must address Wilkins' argument that the parties' use of the term "radius" should be construed to mean highway miles rather than a straight line. The argument is unavailing. We need not resort to rules of construction to resolve the question because the terms of the noncompetition agreement

— "within a 20 (twenty) mile radius" — unambiguously express the parties' intent to establish the protected area by way of a straight line extending from the clinic to the circumference of a circle rather than by way of traveled highways. See *BJ of Leesburg, Inc. v. Coffman*, 642 So. 2d 83, 84 (Fla. Dist. Ct. App. 1994) (use of term "radius" in agreement precluding former employee from engaging in same business as employer "within a ten (10) mile radius" of former employment "is plain and unambiguous, and has nothing to do with road mileage"); *Thompson v. Allain*, 377 S.W.2d 465, 468 (Mo. Ct. App. 1964) (because it is common knowledge that roads do not extend from given place in straight line to every point on compass, term "radius of fifty (50) miles" in noncompetition agreement "could not mean road miles"); *Scuitier v. Barile*, 70 A.2d 894, 895 (N.J. Super. Ct. Ch. Div. 1950) (if area in restrictive covenant is expressed by use of word "radius," prescribed distance should be measured along direct line because radius means straight line extending from center of circle to its circumference); *Johnson v. McIntyre*, 163 A. 290, 291 (Pa. 1932) (court may not construe phrase "a radius of fifteen miles" in noncompetition agreement as meaning within fifteen miles by way of traveled highway). The cases cited by Wilkins do not directly address this issue, and thus are not persuasive.

¶ 12. Given the plain and unambiguous terms of the parties' noncompetition agreement, Wilkins violated the agreement when she began working for Catamount, regardless of where her customers resided. Therefore, we need not consider Wilkins' cross-appeal argument that the court erred by construing the agreement to preclude her from soliciting new customers who reside within Johnston's core trade area, even if she is practicing outside that area.

¶ 13. The parties' agreement provides that if either party violates the agree-

ment the prevailing party shall be entitled to reasonable attorney's fees. Here, the superior court declined to award Johnston attorney's fees because it found the violation by Wilkins to be de minimis. This conclusion was based on the court's determination that Catamount was outside Johnston's core trade area, and Wilkins had seen only three or four customers that resided within that area. But in light of our conclusion that Catamount *is* within the area restricted by the parties' agreement, Wilkins' violation of the agreement invited the enforcement action. Notwithstanding his failure to prove actual damages, Johnston was entitled to injunctive relief. Accordingly, the matter must be remanded for the court to award Johnston reasonable attorney's fees.

¶ 14. Finally, we find no merit to Johnston's arguments that (1) the superior court abused its discretion by failing to extend the noncompetition agreement for an additional year or two, and (2) the court erred by not awarding him at least nominal damages or attorney's fees for Catamount's intentional interference with the parties' agreement. Regarding the first argument, there is evidentiary support for the court's finding that Johnston's practice has suffered no negative impact as the result of Wilkins' employment at Catamount. `Hence, there was no need to extend the duration of the agreement. Regarding the second issue, in addition to the court's finding of no actual damages, there was ample support for the court's finding that Catamount hired Wilkins believing in good faith that its practice was outside the area protected by the parties' agreement. Further, Catamount rehired Wilkins only after the superior court strongly suggested that Johnston was unlikely to prevail in his lawsuit. Under these circumstances, the court did not err in refusing to award damages or attorney's fees with respect to Johnston's claim that

Catamount intentionally interfered with the parties' noncompetition agreement.

*Reversed and remanded.*