Summits 7 v. Lasker, No. 1328-03 CnCv (Katz, J., Apr. 7, 2004)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

STATE OF VERMONT                                    SUPERIOR COURT
Chittenden County, ss.:                           Docket No. 1328-03 CnCv

SUMMITS 7, INC.

v.

STACI LASKER (KELLY)

FINDINGS OF FACT
CONCLUSIONS OF LAW
AND NOTICE OF DECISION

This matter came on for trial April 6, 2004. The parties stipulated that the expedited hearing would be one on the merits of the claim. Stipulated facts were submitted by the parties. We will not repeat them

here, although they are adopted and relied upon.  We state only findings additional to those stipulated.

FINDINGS OF FACT

29.  Defendant Lasker was hired by Summits to be an accounts clerk, and was to be paid $10 per hour, or approximately $21,000 per year.

30.  Lasker had good experience and background in the graphic arts.

31.  She was put in a graphic arts position, to take advantage of her knowledge and experience, approximately four months after starting.

32.  Lasker assumed greater and greater responsibility in sales and customer service with Summits, eventually becoming a supervisor.  Her pay grew in accordance with the increased responsibilities, reaching $39,000 in 2001, $49,000 in 2002, and $19,000 for the first three months of 2003, by the time she resigned.

33.  Although Lasker is apparently correct in her contention that she received no formal training in the graphic arts industry during her employment with Summits, we are persuaded she did learn a good deal about business.  Her gracious letter of termination may have been written with mixed motives, when it alludes to the opportunity to learn and grow.  But it is inherent in business that technical skills are not the be all and end all of a successful career.  Lasker was given new and higher levels of responsibilities, and we are persuaded she must have learned a good deal regarding how to handle those responsibilities—a significant business

advantage.

## CONCLUSIONS OF LAW

1. Covenants not to compete are enforceable in Vermont. Johnston v. Wilkins, 2003 Vt. 56 (remanded for issuance of injunction); Fine Foods, Inc. v. Dahlin, 147 Vt. 599 (1987) (affirming issuance of injunction).

1. We have previously indicated that continuation of employment at will constitutes sufficient consideration to support a newly executed covenant not to compete. Camco, Inc. v. Baker, 936 P.2d 829, 832 (Nev. 1997) (noting that continuation of at will employment satisfying consideration is the majority rule); see also F. Tinio, Sufficiency of Consideration for Employee's Covenant Not to Compete, Entered into After Inception of Employment, 51 A.L.R.3d 825 (1973). We continue in that view. In this case, however, it is really unnecessary to even reach that conclusion. Defendant Lasker was given substantial promotions and higher pay during her employment with plaintiff Summits. Either of these constituted more than reasonable consideration for the required covenants, even if they were not precisely timed to match the upward steps, or presented to the employee as the price of such steps. See, e.g., Ikon Office Solutions, Inc. v. Dale, 170 F. Supp. 2d 892 (D. Minn. 2001) (consideration for covenant valid when real and additional advantages are provided).

2. The foregoing conclusion of course also necessarily rejects defendant's argument that she was somehow "coerced" into signing the onerous covenant. Being required by an employer to enter into such an

agreement, on consideration of continued employment, or even promotion, if as appears is a legal right of the employer, is not thereby offensive coercion. See, e.g., Lake Land Emp. Group of Akron, LLC v. Columber, 804 N.E.2d 27, 32 (Ohio 2004) ("It follows that either an employer or an employee in an at-will relationship may propose to change the terms of their employment relationship at any time.").

3. Although it may be that the geographic scope of the covenant in this case is unduly broad, extending beyond the boundaries of Vermont, we again need not reach this question. Defendant has pursued employment with a direct competitor of plaintiff, within a short geographic distance and in precisely the market served by plaintiff. Even were we to accord a narrow construction to an ambiguous term regarding the geographic scope of the covenant, it would surely extend beyond her new employment venue.

4. Defendant appeals to the court to not make her lose her present employment, which offends the clear language of the contract, on the basis of several family considerations. Implicitly at least, she indicated that as a single mother the restrictions would fall more harshly upon her. Were that the law, it would tend to cause employers to discriminate against single mothers in job promotion, for the message would be clear that covenants not to compete are more enforceable against that group. We know of no precedent suggesting that the group of single mothers is entitled to narrow enforcement of covenants not to compete than any other group.

5. Next, defendant suggests that her divorce agreement provides that her substantial custody of two children would be jeopardized if she had to move outside of Chittenden County. First, that would not be

anything which should be the responsibility of her former employer. Second, we believe Vermont custody law is, in fact, quite forgiving of custodial parents who chose to relocate. Lane v. Schenck, 158 Vt. 489 (1992) (holding that mother's decision to relocate to Iowa, to attend law school, should not cause her to lose sole custody of the children).

6      . Defendant seemed to suggest by her evidence that she should not be held to the covenants she signed, because the company was not doing well at the time she chose to leave it.   We are aware of no support in precedent for such a "sinking ship" argument.  Defendant's own salary and commissions were never either delayed or reduced.  Indeed, the evidence supports the conclusion that it was rising even though the company may have had to reschedule some payables.  Of course, buying into her theory would jeopardize all sorts of businesses, by making any temporary downturn the basis for stripping them of their most valuable asset—the human resources built up and protected by covenants not to compete.

## NOTICE OF DECISION

Plaintiff is entitled to an injunction according to the terms of its covenant not to compete, barring defendant Lasker from employment with a direct competitor, such as Offset House, for the proscribed period. Counsel shall submit such a proposed judgment.

Dated at Burlington, Vermont, _____, 200__.


_____
Judge