2013 VT 37

Patrick Ayer and Terese Ayer v. Louis Hemingway, III, Individually and d/b/a Hemingway Construction and Frances Harris, et al.

[73 A.3d 673]

No. 11-431

Present: Reiber, C.J., Dooley, Burgess and Robinson, JJ., and Crawford, Supr. J., Specially Assigned

Opinion Filed May 24, 2013

*George E. Spear, II*, Swanton, and *Michael Rose*, St. Albans, for Plaintiffs-Appellants.

*Timothy G. Hurlbut*, St. Albans, for Defendant-Appellee.

¶ 1. **Burgess, J.** Plaintiffs Patrick and Terese Ayer appeal from the trial court's order granting summary judgment to defendants Frances Harris and Louis Hemingway, III, in this foreclosure case. The Ayers argue that the court erred in concluding that their judgment lien had expired. We affirm.

¶ 2. This case involves plaintiffs' longstanding attempts to collect a debt from defendant Hemingway, individually and d/b/a Hemingway Construction. Plaintiffs obtained a default judgment against Hemingway in February 2001 for $6830 plus costs of $179.66, with interest accruing at 12% per year ("the 2001 judgment"). The 2001 judgment order did not specify a payment schedule. Plaintiffs subsequently secured a nonpossessory writ of attachment against Hemingway's nonexempt goods and estate.

¶ 3. In November 2004, plaintiffs filed a motion for a possessory writ of attachment. After Hemingway failed to appear at a hearing on the motion, and with court approval, plaintiffs made service by publication pursuant to Vermont Rule of Civil Procedure 4(g). Hemingway subsequently objected to the motion, filing an answer with the court stating, "I did pay my payments until my checks were forged into larger ones." Prior to the contested hearing on these issues, the parties reached an agreement and the trial court issued a stipulated amended order in January 2006 (the "2006 order"). In that order the court recounted that Hemingway had paid only $1150 toward his debt and that, as of September 8, 2005, he owed plaintiffs $11,400. The court wrote: "An amended judgment in this matter is granted for the Plaintiffs against the Defendants as of September 8, 2005 in the amount of $11,400." The order included the parties' stipulated payment plan, with interest accruing at 6% rather than 12%, but stated that if Hemingway defaulted on the payment plan, plaintiffs would be entitled to interest at the rate of 12%, as well as all remedies available to them under Vermont law.[1]

¶ 4. In July 2008, plaintiffs recorded a "Notice of Judgment Lien" in the Alburgh Town Clerk's Office on "all real property held by [Hemingway] in Alburgh" in the amount of $11,400. The

---

[1] Apparently, in connection with the parties' stipulation, plaintiffs did not pursue the possessory writ of attachment that they had initially sought.

notice stated that the lien had been perfected by recording a certified copy of a judgment obtained against Hemingway.[2]

¶ 5. In 2010, Frances Harris brought an unrelated action against Hemingway for damages. In connection with that action, on August 25, 2010, Hemingway conveyed to Harris two lots in Alburgh that Hemingway had acquired in 2006. At the same time, the trial court issued a stipulated judgment order that, among other things, awarded Harris judgment against Hemingway in the amount of $11,400 plus interest at 12% from September 8, 2005 until the release of the lien in favor of plaintiffs, required Hemingway to keep current on payments to plaintiffs pursuant to a written payment agreement signed by Hemingway and plaintiff Terese Ayer, and provided that if Hemingway defaulted on the lien, he would be liable to Harris for any costs, including attorney's fees, to obtain a release of the lien.

¶ 6. The agreement signed by plaintiff Terese Ayer and Hemingway on August 23, 2010, providing that Hemingway would pay Ayer $7050 over thirty-nine months to settle his debt, was filed with the Harris-Hemingway stipulation. In this agreement, Hemingway stated that he would pay Ayer $201.02 per month for 3.25 years to pay the outstanding debt of $7050, agreed that a lien would remain on his property in Alburgh until the judgment was paid in full, and acknowledged that if he defaulted on his payments, the interest rate would revert to 12% and be recalculated based on the adjusted amount of $11,400 as reflected in the January 2006 order.

¶ 7. In May 2011, plaintiffs filed a complaint seeking to foreclose on their judgment lien. Plaintiffs alleged that Hemingway defaulted on his agreement and violated the 2006 order by failing to make any payments after January 2008. Based on the terms of the 2010 payment modification agreement and the 2006 order, plaintiffs asserted that Hemingway owed them $8597 in principal and $3312 in interest at 12% per annum. Plaintiffs cited the 2006 order as the controlling order and asked the court to renew or revive this order.

¶ 8. Plaintiffs named Harris as a defendant in this action because she had acquired the real property upon which they sought to foreclose from Hemingway after plaintiffs' judgment lien was filed, as noted above.

---

[2] We cannot confirm based on this record which order was included — the 2001 order or the 2006 "stipulated amended order."

¶ 9. Hemingway filed an unverified answer to plaintiffs' complaint, acknowledging his debt to plaintiffs and offering to make immediate payments pursuant to the 2010 agreement. Harris also filed an unverified answer. Plaintiffs moved for a default judgment, but the court denied their request, granting defendants additional time to file answers that were verified or supported by affidavits. Harris responded to this order; Hemingway did not. Harris later moved for summary judgment, and plaintiffs filed a cross-motion for summary judgment and default.

¶ 10. In January 2011, the trial court granted Harris's motion for summary judgment. As discussed in additional detail below, the court found that plaintiffs' judgment lien was no longer effective because more than eight years had elapsed from the issuance of the original final judgment on which it was based. See 12 V.S.A. § 2903(a). In reaching its conclusion, the court rejected plaintiffs' assertion that the 2001 judgment had been renewed or revived by the 2006 stipulated amended order. As the court explained, revival required the filing of a new and independent action on the judgment, see 12 V.S.A. § 506, which had not occurred here.

¶ 11. The court also rejected the plaintiffs' contention that the 2006 order was a new "final judgment" from which a new eight-year period began to run. The court found that the 2001 order had ended the litigation and disposed of the subject matter before the court while the 2006 agreement merely set forth a payment schedule to carry that judgment into effect. For this and other reasons, the court concluded that the plaintiffs' lien could not be foreclosed upon, and it thus granted Harris's request for summary judgment. This appeal followed.

¶ 12. Plaintiffs maintain that their foreclosure action is timely. They first assert that they renewed the 2001 judgment by filing the functional equivalent of a new complaint. Although the pleading that led to the 2006 order was captioned as a "Motion for a Possessory Writ of Attachment" and utilized the same docket number as the original action, plaintiffs filed a summons and served the motion on Hemingway pursuant to the provisions of Rule 4(g) for service upon initiation of a new action. For that reason, plaintiffs argue that their motion for a possessory writ of attachment provided Hemingway with notice and an opportunity to be heard, and it should be considered a "new and independent action." Alternatively, plaintiffs argue that the 2006 order should be considered a new final judgment.

¶ 13. We review a grant of summary judgment using the same standard as the trial court. *Richart v. Jackson*, 171 Vt. 94, 97, 758 A.2d 319, 321 (2000). Summary judgment is appropriate "when, taking all allegations made by the nonmoving party as true, there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Id.*; V.R.C.P. 56(a). Summary judgment was properly granted to defendants here.

¶ 14. As the trial court recognized, a judgment lien is effective only "for eight years from the issuance of a final judgment on which it is based." 12 V.S.A. § 2903(a). The default judgment against Hemingway was entered on February 2, 2001, and plaintiffs did not file their foreclosure complaint until May 10, 2011, outside the eight-year period. Thus, the judgment lien was no longer in effect when the complaint was filed and plaintiffs were not entitled to foreclose on the judgment lien.

¶ 15. While the law allows for the renewal of judgments within the eight-year statutory period, see 12 V.S.A. § 506, such judgments can be renewed only by the filing of a "new and independent suit commenced in accordance with Rule 3." *Nelson v. Russo*, 2008 VT 66, ¶ 6, 184 Vt. 550, 956 A.2d 1117 (mem.). They cannot be renewed by motion. *Id.* Our decision in *Russo* was designed to clarify the law in this area given the absence of a specific statute addressing the process for renewing judgments and a confusing reference to renewal by motion in the civil rules. *Id.* ¶ 12.

¶ 16. As plaintiffs acknowledge, they did not file a new complaint on the judgment. Instead, they filed a motion for a possessory writ of attachment and eventually entered into a stipulated agreement with Hemingway regarding his payment of the 2001 debt. While Hemingway may have had notice and an opportunity to respond to plaintiffs' motion, that does not transform their motion into a complaint. *Russo* plainly requires a new and independent suit initiated by the filing of a complaint, not the filing of something that is arguably akin to a complaint. Any other conclusion would reintroduce uncertainty into the judgment renewal process. We thus hold that the 2001 judgment was not properly renewed.

¶ 17. Plaintiffs next assert that the 2006 order constitutes a new "final judgment" for purposes of 12 V.S.A. § 2903(a). According to plaintiffs, the 2006 order not only reaffirmed the monetary

judgment in the 2001 order, but it also settled any potential disputes regarding what payments Hemingway had made and what interest was owed. Had the parties not reached an agreement, plaintiffs continue, Hemingway would have been allowed to appeal from the 2006 order.

¶ 18. We find these arguments unpersuasive. The "final judgment" that triggered the running of the statute of limitations was the 2001 default order. It was this order that ended the litigation between the parties and finally disposed of the subject matter before the court. See *Youngbluth v. Youngbluth*, 2010 VT 40, ¶ 18, 188 Vt. 53, 6 A.3d 677 (final judgment is one whose effect is to end litigation); *In re Armitage*, 2006 VT 113, ¶ 6, 181 Vt. 241, 917 A.2d 437 (final judgment is one that "makes a final disposition of the subject matter before the Court" (quotation omitted)). The 2006 order merely set forth an agreed-upon payment plan for the 2001 debt. It was not a new decision on the merits. The fact that this order might have been appealable does not change this result.

¶ 19. Any other holding would create a continually moving statute of limitations. Trial courts routinely issue post-judgment orders that identify payments made and interest that has accrued. Were we to construe each of these orders as starting a new limitations period, a party could extend the life of a judgment lien indefinitely by filing motions to reduce additional accrued interest to judgment. The statute does not contemplate this result, and the need for certainty and predictability in the law compels us to reject such an approach. The statute of limitations runs from a single ascertainable moment — the issuance of a final judgment on the merits. That occurred here in 2001. While plaintiffs were hardly sleeping on their rights, they failed to bring an appropriate action within eight years of this date. Plaintiffs' right to foreclose on a judgment lien tied to the 2001 judgment consequently expired. Given our conclusion, we need not decide if plaintiffs properly perfected their lien in the town land records.[3]

---

[3] We consider only plaintiffs' foreclosure action premised on its judgment against defendant Hemingway and do not consider any potential claims against Hemingway for breach of contract based on the promises he made in 2006 and 2010, or against Harris as third-party beneficiaries of the 2010 agreement between Harris and Hemingway. See generally C. Marvel, Annotation, *Part Payment or Promise to Pay Judgment as Affecting the Running of Statute of Limitations*, 45 A.L.R.2d 967 (1956); see also *F. Chaffee's Sons v. Estate of Blanchard*, 105 Vt. 389,

¶ 20. Finally, we reject plaintiffs' assertion that the court should have entered a default judgment against Hemingway. According to plaintiffs, the only requirement for entry of default is a defendant's failure to enter a verified answer; given Hemingway's failure to file such an answer, a default judgment should have issued here.

■ ■ ¶ 21. It is true that Rule 80.1(c) states that when a defendant fails to file "a verified answer or answer supported by affidavits, disclosing facts alleged to constitute a defense to plaintiff's claim," then "[t]he clerk shall enter a default, in accordance with Rule 55(a)." However, Rule 55 "commits judgment by default to the trial court's discretion." *DaimlerChrysler Servs. N. Am., LLC v. Ouimette*, 2003 VT 47, ¶ 6, 175 Vt. 316, 830 A.2d 38. In *Ouimette*, we held that the trial court had discretion to conclude sua sponte that the statute of limitations barred a plaintiff's request for a default judgment. We reach a similar conclusion here. The court had discretion to refuse to enter a default judgment against Hemingway given its conclusion that plaintiffs' judgment lien had expired.

*Affirmed.*

¶ 22. **Robinson, J.,** dissenting. I agree with the majority that a judgment may be renewed only by the filing of a new and independent suit. *Nelson v. Russo*, 2008 VT 66, ¶ 6, 184 Vt. 550, 956 A.2d 1117 (mem.). See *ante*, ¶ 15. Had Hemingway objected to plaintiffs' attempt in 2006 to secure a new amended judgment in the case initially resolved by the 2001 judgment, he likely would have prevailed. Likewise, had the trial court declined to enter the 2006 judgment, I would have voted to affirm an appeal of that determination. There is no basis in the Vermont Rules of Civil Procedure for amending a judgment five years after its issuance for the purpose of "updating" the judgment to account for accrued interest, payments made toward principal, or a modified payment plan, in the absence of an infirmity in the judgment itself. See V.R.C.P. 60; see also *Nelson*, 2008 VT 66, ¶¶ 8-9. The proper procedure is a separate and independent action

392, 165 A. 912, 913 (1933) ("A new promise will revive the [contract] right of action whether made before or after the statute [of limitations] has run."); 12 V.S.A. § 2902 ("The lien created by this chapter shall be in addition to and separate from any other remedy or interest created by law or contract.").

to enforce the judgment; in the context of such a proceeding, plaintiffs are free to seek a new judgment reflecting the underlying judgment, amounts paid toward that judgment, and interest accrued. See 12 V.S.A. § 506. For all of these reasons, had Hemingway objected, or had the trial court balked, the 2006 order would not have stood.

¶ 23. But Hemingway did not object. He *stipulated* to the 2006 order. The trial court exercised its discretion to enter an amended judgment pursuant to the parties' stipulation. That judgment is the judgment plaintiffs allegedly recorded in the Alburgh land records. That judgment is the judgment to which the judgment lien invoked by plaintiffs allegedly attaches.[4] And that judgment is a final judgment that is not subject to collateral attack. See *Johnston v. Wilkins*, 2003 VT 56, ¶ 8, 175 Vt. 567, 830 A.2d 695 (mem.) (stipulated settlement incorporated into court's final judgment disposing of matter has preclusive effect of final judgment). Moreover, the statute of limitations for enforcing or renewing that judgment, and for invoking the judgment lien, has not run. 12 V.S.A. §§ 506, 2903.

¶ 24. This is where I part ways with the majority. The majority essentially concludes that the 2006 order was not, for purposes of the statute of limitations, a judgment at all. Rather, the majority holds, the only relevant judgment was the 2001 judgment determining Hemingway's initial debt to plaintiffs — even though the 2001 judgment is *not* the judgment on which plaintiffs have brought this action, and is *not* the judgment to which the judgment lien asserted by plaintiffs allegedly attached.

¶ 25. I cannot concur in the majority's conclusion that the 2006 order was not in fact a judgment for the purposes of the statute of limitations. I rely first and foremost on the common understanding of the term "judgment." "Judgment" is not defined in the judgment lien statute, so we look to the definitions of the term found in Rule 54(a) and case law. Rule 54(a) defines judgment as "a decree and any order from which an appeal lies." We have repeatedly cited and applied this rule in our decisions, noting that "[w]hether an order is appealable is left to case law." *Iannarone*

---

[4] As the majority notes, we cannot confirm based on this record that the 2006 order was, in fact, the order secured by a judgment lien. Had we reversed for the reasons set forth in this dissent, I would remand for a determination of whether plaintiffs effectively recorded the 2006 judgment so that they can foreclose on the lien.

*v. Limoggio*, 2011 VT 91, ¶ 17, 190 Vt. 272, 30 A.3d 655. "The test of finality 'is whether it makes a final disposition of the subject matter before the Court.'" *Id.* (quoting *Morissette v. Morissette*, 143 Vt. 52, 58, 463 A.2d 1384, 1388 (1983)); see also *Bach v. Dawson*, 268 P.3d 1189, 1191 (Idaho Ct. App. 2012) ("As a judgment must function by its character as a final determination of the parties' rights in a lawsuit, whether a document is a court order or a 'judgment' has long been held to be determined not by the document's title, but by its contents."). Had the 2006 order resulted from a nonstipulated court order, either party clearly could have appealed.

¶ 26. Significantly, in other contexts, we have applied the common understanding of the meaning of a "judgment" to issues other than the appealability of a particular trial court order. See, e.g., *Iannarone*, 2011 VT 91, ¶ 17 (using Rule 54(a) definition of "judgment" in determining whether final judgment existed for purposes of claim preclusion); see also *Bach*, 268 P.3d at 1192 ("As these sections are akin to a statute of limitations of an enforceable judgment, what constitutes a 'judgment' should be based on a final, appealable (and hence, enforceable) order in the case.").

¶ 27. The majority does not contest that for ordinary purposes the 2006 order was, in fact, a judgment, but essentially crafts a separate definition of "judgment" for the purposes of the statute of limitations. 12 V.S.A. § 2903. In so doing, the majority departs from our ordinary presumption that the Legislature intends terms in statutes to have their well-established legal meanings. See *Morissette v. United States*, 342 U.S. 246, 263 (1952) (stating that when legislature "borrows terms of art in which are accumulated the legal tradition and meaning of centuries of practice, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken").

¶ 28. The fact is, the statute of limitations draws no distinction between "original" and "amended" judgments, and nothing in the language of the statute supports the notion that "judgment" has a different meaning for the purposes of the statute of limitations than for other purposes. See 12 V.S.A. § 2903(a) ("A judgment lien shall be effective for eight years from the issuance of *a final judgment on which it is based* . . . ." (emphasis added)).

¶ 29. In light of the above considerations, the 2006 order was clearly a judgment. It made a final disposition of the issues before

the trial court — plaintiffs' claim to be paid pursuant to the 2001 judgment and defendant Hemingway's response that plaintiffs had forged check amounts. The fact that the order was issued pursuant to stipulation rather than after a contested hearing does not mean that it was any less a final judgment. *Johnston*, 2003 VT 56, ¶ 8.

¶ 30. Moreover, the 2006 order did not merely rehash the substance of the 2001 judgment. It resolved a subsequent live dispute: how much did Hemingway owe plaintiffs pursuant to that 2001 judgment? The 2006 order established new terms: setting a new total judgment due, establishing terms of repayment that did not exist in the initial judgment, and identifying a rate of interest — 6% except if Hemingway defaulted — that differed from the 2001 judgment. The 2006 order cannot be characterized as "merely [a] continuation of an action, which create[s] nothing anew, but may be said to reanimate that which before had existence." *Corzo Trucking Corp. v. West*, 61 So. 3d 1285, 1289 (Fla. Dist. Ct. App. 2011) (quotation and alterations omitted) (distinguishing between judgments in actions on judgment, which start limitations clock from scratch, and post-judgment proceedings, which do not); see also *Koerber v. Middlesex Coll.*, 136 Vt. 4, 8, 383 A.2d 1054, 1057 (1978) (describing common law writ to revive judgment that "created nothing new, but rather was merely 'the continuation of an action, — a step leading to the execution of a judgment already obtained, and enforcing the original demand for which the action was brought.'" (quoting 2 A. Freeman, Law of Judgments § 1091 (5th ed. 1925))). I see no reason to discount the order's status as a judgment merely because the dispute that it resolved was itself predicated on a judgment.

¶ 31. In addition, the 2006 order amended and thereby superseded the 2001 judgment. Plaintiffs could not thereafter seek to enforce the terms of the 2001 judgment, and Hemingway could not thereafter defend that he had made payments in compliance with the 2001 judgment. The only judgment remaining to enforce is that reflected in the 2006 order. These impacts — extinguishment of prior claims and judgments and defenses thereto — are hallmarks of a judgment. See Restatement (Second) of Judgments § 17 (1982) (discussing doctrine of merger). By contrast, rulings that are not final judgments are generally subject to revision by the trial court prior to a final judgment. *Morrisseau v. Fayette*, 164 Vt. 358, 363, 670 A.2d 820, 823 (1995) ("[U]ntil final decree the

court always retains jurisdiction to modify or rescind a prior interlocutory order." (quotation omitted)). Because the 2001 judgment was effectively supplanted by the 2006 order, if plaintiffs had thereafter expressly sought to renew or revive the 2001 judgment pursuant to 12 V.S.A. § 506, they could not have done so; that judgment was no longer effective. The judgment plaintiffs sought to enforce in this case, and the judgment to which their judgment lien allegedly relates, is the judgment embodied in the 2006 order.

¶ 32. The majority's multiple definitions of "judgment" for different purposes also creates potential practical problems. Rather than promoting clarity, the majority's approach injects uncertainty into the business of enforcing judgments. How is one to know when a court judgment that amends a prior judgment is a *real* judgment for statute of limitations purposes, and when it is not? Is the Court's holding limited to amended judgments that add interest and reflect an updated principal balance? What if an amended judgment issued pursuant to Rule 60(b) flips the obligor and obligee from the original judgment? Does the newly-minted creditor have eight years from the date of the *original* judgment — pursuant to which that party was required to pay the other — even if the amended judgment came years later? See *Estate of Roxas v. Marcos*, 214 P.3d 598, 606 (Haw. 2009) ("Holding that the first-in-time judgment controls the statute of limitations for [requests to extend] subsequent judgments would produce an absurd result when the first-in-time judgment does not address or resolve any of the claims ruled on by the subsequent judgment."). One can even imagine the odd situation in which post-trial relief to amend a judgment might be available — pursuant to V.R.C.P. 60(b)(6), for example — but a party would then be foreclosed from actually enforcing the amended judgment.

¶ 33. My approach no more invites a "continually moving statute of limitations" than the majority's. *Ante*, ¶ 19. The majority does not contend that the eight-year limitations period is a once-and-for-all limitation. The Legislature has established a mechanism for reviving a judgment and extending a judgment lien, thereby essentially starting the limitations clock anew. See 12 V.S.A. §§ 506, 2903(b). This process may, through successive renewals, keep a judgment and judgment lien alive and enforceable indefinitely. The majority's concern is not with the fact of renewing judgments and the associated shift in the statute of limitations

applicable in a given controversy; the majority's concern is the *procedure* by which a party secures a renewed judgment.[5]

¶ 34. The real problem here is the 2006 order: it was not secured through the proper procedure. Although apparently not uncommon, the practice of issuing an amended judgment to reflect accrued interest and an updated principal balance is not sanctioned by any statute or rule. To the extent the majority implicitly so holds, we are on the same page. But insofar as that 2006 order became a final judgment, it was and is enforceable in its own right, an appropriate basis for a judgment lien, and subject to its own statute of limitations. For these reasons, I respectfully dissent.

---

[5] Moreover, it is not clear why a "continually moving statute of limitations" would be contrary to any statutory objective. The purpose of the statutes limiting the enforcement of judgments and judgment liens is not to reward a recalcitrant judgment debtor by providing a windfall if the adjudicated debtor can just hold out long enough. "It is to make necessary the bringing of an action within a reasonable time and thus prevent fraudulent and stale claims from being brought at a time when witnesses have died or disappeared and documentary evidence has been lost or destroyed." *Reed v. Rosenfield*, 115 Vt. 76, 79, 51 A.2d 189, 191 (1947). Because the 2006 order effectively decided any issues concerning payment of the judgment that had arisen prior to that judgment, the only issues concerning satisfaction of the judgment that a court could be asked to address are those arising after the 2006 order — claims no older or more stale than the eight-year limitations statute contemplates.