2015 VT 40

### Flex-A-Seal, Inc. v. Deborah Safford

[117 A.3d 823]

No. 13-332

Present: **Reiber, C.J., Dooley, Skoglund, Robinson, JJ., and Tomasi, Supr. J., Specially Assigned**

Opinion Filed February 27, 2015

*Chad V. Bonanni* of *Bergeron, Paradis & Fitzpatrick, LLP*, Essex Junction, for Plaintiff-Appellant.

*Deborah Safford*, Pro Se, Isle La Motte, Defendant-Appellee.

¶ 1. **Reiber, C.J.** Plaintiff Flex-A-Seal, Inc. appeals from the dismissal of its complaint to renew a judgment against defendant Deborah Safford. The trial court found the complaint barred by the statute of limitations, 12 V.S.A. § 506. On appeal, Flex-A-Seal argues that: (1) the controlling judgment for statute-of-limitations purposes was issued in 2004, not 2002; (2) the statute of limitations was tolled by the terms of a 2002 settlement agreement between the parties and by Safford's acknowledgment and partial payment of her debt; and (3) Safford should be equitably estopped

from asserting the statute of limitations as a defense. We reverse the trial court's decision.

¶ 2. The record indicates the following. In 2001, Flex-A-Seal sued Safford, its former employee, based on her alleged embezzlement of funds. The parties entered into a settlement agreement. In October 2002, the court issued a stipulated judgment order pursuant to the parties' agreement, granting judgment to Flex-A-Seal against Safford in the amount of $230,000. Flex-A-Seal later filed a motion for trustee process against earnings, and in November 2004 the court issued two orders: (1) a bi-monthly wage attachment of $150; and (2) a stipulated order stating the original judgment amount, the judgment amount with interest as of October 28, 2004, and providing for the suspension of post-judgment interest after October 28, 2004 as long as Safford maintained the same employment.

¶ 3. In April 2012, Flex-A-Seal filed a complaint to renew its judgment against Safford. It also filed a motion for trustee process against Safford's earnings as Safford had changed jobs. In an entry order, the court sua sponte questioned if the action was timely filed, citing 12 V.S.A. § 506 ("Actions on judgments and actions for the renewal or revival of judgments shall be brought by filing a new and independent action on the judgment within eight years after the rendition of the judgment, and not after."). Safford then raised the statute of limitations as a defense in her answer.

¶ 4. In a series of rulings, the court denied Flex-A-Seal's motion for trustee process as time-barred and dismissed Flex-A-Seal's complaint on the same grounds. The court rejected Flex-A-Seal's argument that the relevant final judgment for purposes of 12 V.S.A. § 506 was the 2004 stipulated order rather than the 2002 judgment. It found that the plain language of § 506 required a new action to be filed within eight years of the original judgment, and that the statute did not contemplate successive limitations periods triggered by post-judgment rulings.

¶ 5. The court also cited *Ayer v. Hemingway*, 2013 VT 37, 193 Vt. 610, 73 A.3d 673, in support of its decision. In *Ayer*, the plaintiffs obtained a 2001 default judgment against the defendant. In 2006, the trial court issued a "stipulated amended order" that set forth the parties' agreed-upon payment plan, and recited the amount of the outstanding debt. In 2011, the plaintiffs filed a complaint to foreclose on a judgment lien that they had placed on

the defendant's real property. The trial court found that the judgment lien was no longer effective because more than eight years had elapsed from the issuance of the original final judgment on which it was based. See 12 V.S.A. § 2903(a) ("A judgment lien shall be effective for eight years from the issuance of a final judgment on which it is based . . . .").

¶ 6. On appeal, the plaintiffs argued that the 2006 order was a new "final judgment" from which a new eight-year statute-of-limitations period began to run. We rejected this argument. *Id.* ¶ 18. We concluded that the "final judgment" that triggered the running of the statute of limitations was the 2001 default order because this order "ended the litigation between the parties and finally disposed of the subject matter before the court." *Id.* The 2006 order "was not a new decision on the merits"; it "merely set forth an agreed-upon payment plan for the 2001 debt." *Id.* Any other conclusion, we reasoned, "would create a continually moving statute of limitations" because "[t]rial courts routinely issue post-judgment orders that identify payments made and interest that has accrued." *Id.* ¶ 19. We found that the statute did not contemplate such a result, and that "the need for certainty and predictability in the law" required the rejection of such an approach. *Id.*

¶ 7. Based on these considerations, the trial court in this case similarly concluded that Flex-A-Seal's 2002 judgment against Safford was the controlling judgment for statute-of-limitations purposes. The court also rejected Flex-A-Seal's assertion that the statute of limitations was tolled when Safford acknowledged her debt to Flex-A-Seal and made partial payments on the debt. Citing J. Calamari & J. Perillo, Contracts § 5-7, at 255 (3d ed. 1987), the court recognized that, in contract law, an acknowledgment of the existence of a debt was considered to be an implied promise to pay that "has the effect of starting the statute of limitations running anew." Likewise, the "voluntary part payment of a debt . . . if made without protestation of further liability, is a recognition of such debt by the debtor, from which the law not only implies an admission of the existence of the balance as a subsisting debt, but also a promise to pay it which prevents the operation of the statute." *Putnam v. Swain*, 102 Vt. 90, 93, 146 A. 6, 7 (1929). The court found this common law rule reflected in 12 V.S.A. § 591, which requires an acknowledgement of a debt to be written and signed, and in 12 V.S.A. § 592, which requires an

indorsement or memorandum of partial payment to be in the debtor's handwriting to be enforceable.

¶ 8. The court noted that under early Vermont law, this rule apparently applied to judgments as well as contracts. The court cited *Olcott v. Scales*, 3 Vt. 173, 178 (1831), which holds that in an action of debt on judgment, "an acknowledgement that the debt is due and unpaid, without the addition of any expression intimating that the debtor is not liable to pay it, does remove the statute bar." In light of *Ayer*, however, and *Nelson v. Russo*, 2008 VT 66, 184 Vt. 550, 956 A.2d 1117 (mem.), the trial court concluded that the rule no longer applied to judgments.

¶ 9. In *Nelson*, the court explained, this Court clarified that under 12 V.S.A. § 506 a plaintiff must file a new and independent action to renew a judgment and cannot do so by motion. 2008 VT 66, ¶ 9. The Court reiterated this principle in *Ayer*, 2013 VT 37, ¶ 15. Given the emphasis on ensuring finality and certainty of judgments, the court rejected the argument that a defendant's acknowledgment and partial payment of a debt tolled the statute of limitations. It found that applying the contract rule to judgments would introduce uncertainty into the judgment-renewal process, a result the *Ayer* Court clearly sought to avoid. Additionally, the court reasoned that if a defendant's statement of willingness to pay or partial payments toward the debt was sufficient to toll the statute, there would be no need to renew the judgment and the statute would be rendered superfluous in many cases. The court found its conclusion in accord with decisions from other jurisdictions, which hold that acknowledgement and partial payment do not toll the statute of limitations with regard to judgments because judgments are not contracts. The court acknowledged cases holding to the contrary but found them distinguishable.

¶ 10. Finally, the court rejected Flex-A-Seal's assertion that Safford should be equitably estopped from raising a statute-of-limitations defense. It found that Flex-A-Seal failed to show that it was ignorant of any facts or that it had reasonably relied on Safford's assurances in lieu of renewing its judgment against her. Thus, for all of these reasons, the court dismissed Flex-A-Seal's complaint as time-barred under 12 V.S.A. § 506.

¶ 11. Flex-A-Seal moved for reconsideration under Vermont Rule of Civil Procedure 59(e), arguing that the court failed to consider a 2002 settlement agreement between the parties in which Safford

allegedly agreed to waive any defenses to enforcement of the judgment, including time-related defenses. The court explained that it had not considered this agreement because Flex-A-Seal had not provided it to the court; the agreement was not in the record of the case or in the record of the original 2001 case; and Flex-A-Seal made no mention of the settlement agreement in any of its prejudgment pleadings. The court found that Flex-A-Seal easily could have presented this evidence in a timely fashion, and that Rule 59(e) was not intended to relieve a party from its own mistakes. It thus concluded that, under the circumstances, relief under the rule was not warranted. The court noted that, even if it were to consider the agreement, it was not clear that its terms would change the outcome of the case.

¶ 12. Flex-A-Seal now appeals. We review the trial court's dismissal order de novo. *Dernier v. Mortg. Network Inc.*, 2013 VT 96, ¶ 23, 195 Vt. 113, 87 A.3d 465. Assuming the truth of all factual allegations and reasonable inferences derived from the complaint, a complaint should not be dismissed "unless it is beyond doubt that there exist no facts or circumstances that would entitle the plaintiff to relief." *Id.* (quotations omitted).

¶ 13. We begin with Flex-A-Seal's assertion that the 2004 order should be considered a new final judgment for statute-of-limitations purposes. According to Flex-A-Seal, the 2004 judgment is controlling because it significantly modifies and supersedes the 2002 judgment.

¶ 14. ██ This argument is foreclosed by our decision in *Ayer*. As set forth above, we concluded in that case that the controlling judgment for statute-of-limitations purposes is the judgment that "end[s] the litigation between the parties and finally dispose[s] of the subject matter before the court." 2013 VT 37, ¶ 18. It is evident that the 2002 judgment in this case satisfies these requirements. As in *Ayer*, the 2004 order "was not a new decision on the merits"; it merely set forth the outstanding amount due on the original judgment and reflected the terms under which continuing payments would be made. Adopting Flex-A-Seal's approach would create the same "continually moving statute of limitations" that we rejected in *Ayer*. We thus agree with the trial court that the 2002 order triggered the running of the statute of limitations.

¶ 15. ██ We next consider Flex-A-Seal's assertion that the statute of limitations was tolled by the terms of the parties' 2002

settlement agreement and by Safford's acknowledgement and partial payment of her debt. We do not address Flex-A-Seal's arguments concerning the 2002 settlement agreement because, as the trial court held, that agreement was not timely submitted below. The only issue that is properly raised with respect to this agreement is whether the court erred in refusing to consider it for the first time on reconsideration. On this point, we find no abuse of discretion. See *Rubin v. Sterling Enters., Inc.*, 164 Vt. 582, 588, 674 A.2d 782, 786 (1996) (stating that motions to reconsider are not designed to relieve a party from its own fault or neglect, and trial court has wide discretion in ruling on such motions).

¶ 16. ■ We thus turn to Flex-A-Seal's second argument. Flex-A-Seal cites *Putnam*, 102 Vt. at 93, 146 A. at 7, and Olcott, 3 Vt. at 178, to support its assertion that Safford's acknowledgement and payment of the debt tolled the limitations period. While *Putnam* was a contract action, *Olcott*, like the instant case, involved a plaintiff's attempt to collect a judgment debt. The *Olcott* Court expressly held that in such cases the acknowledgement of a debt, in terms that admit it to be due, removes the effect of the statute of limitations. 3 Vt. at 178. The Court found this principle well-established, explaining that it was part of the common law, it had been adopted by statute, and it was treated as the law "in all the decisions in this state." *Id.*

¶ 17. ■ The Court described the basis for this rule in *Gailer v. Grinnel*, 2 Aik. 349, 1828 WL 1161 (1828). There, the Court similarly held that, in actions of debt on judgment, an acknowledgment of the debt within the statute-of-limitations period removed the statutory bar. *Id.* at 354. The Court recognized that this was the rule in contract actions. *Id.* at 353. It explained that the principle governing the construction of the contract-action statute of limitations was that "a presumption arises from the lapse of time that the debt has been paid; but, when this presumption is rebutted by an acknowledgment of the debt within six years, the contract is not within the intent of the statute." *Id.* at 352. In other words, "the acknowledgment or new promise is a waiver of the statute, and takes the case out of it, so that the statute does not operate upon it; and whenever a case is taken out of the statute, the original debt is revived, and the action may be brought upon it." *Id.* at 353.

¶ 18. The Court found that this principle "certainly applies as well to a debt arising on judgment as to any other debt." *Id.* It found "nothing appertaining to a judgment debt, or in the language of the statute applied to it, to distinguish it, in this respect, from a debt on simple contract; and, to say that one may be revived by an acknowledgment or promise, and not the other, would be making a distinction, not founded in reason or principle, nor called for by any known rule of law." *Id.* The Court thus held that:

> the defendant's liability was fixed by the judgment, and as the statute goes upon the presumption of payment after the lapse of eight years, the acknowledgment of the debt within eight years shows that it has not been paid, and thus, by removing the presumption, takes the case out of the statute. The acknowledgment . . . revives the debt *ab initio*, and the plaintiff recovers, not on the ground of having a new right of action, but that the statute, by reason of the acknowledgment, does not apply to bar the old one.

*Id.* at 354.

¶ 19. The statute of limitations in effect at the time of these decisions is similar to that in effect now. Between 1797 and 1972, the law provided that "all actions of debt or *scire facias* on judgment" must be brought "within eight years next after the rendition of such judgment, and not after." See R. 1797, p. 597. The statute was modified in 1972 to read: "Actions on judgments and actions for the renewal or revival of judgments shall be brought within eight years after the rendition of the judgment, and not after." 1971, No. 185 (Adj. Sess.), § 33. The statute was amended again in 2010, and now provides that "[a]ctions on judgments and actions for the renewal or revival of judgments shall be brought by filing a new and independent action on the judgment within eight years after the rendition of the judgment, and not after." 12 V.S.A. § 506. The 2010 modification followed our decision in *Nelson*, where we concluded that, under the common law and 12 V.S.A. § 506, a party must file "a new and independent suit commenced in accordance with [Vermont Rule of Civil Procedure] 3" to renew a judgment, and that judgments could not be renewed by motion. 2008 VT 66, ¶¶ 6, 8-9, 12.

¶ 20. ██ ██ Safford has neither argued nor briefed the question of whether we should overrule *Gailer* and *Olcott* in light of the holdings and rationales of *Ayer* and *Nelson*. While we note some possible tension among those decisions, we leave to another day, following complete briefing, any consideration of that issue. See *Johnson v. Johnson*, 158 Vt. 160, 164 n.*, 605 A.2d 857, 859 n.* (1992) (Supreme Court will not consider arguments not adequately briefed). As our case law holds that the same tolling rule applicable to contract actions applies to actions on judgment debts, we reverse the court's decision to dismiss and we remand for further proceedings. Given our conclusion, we do not reach Flex-A-Seal's equitable estoppel argument.

*Reversed and remanded.*